## WM. CHAMBERLIN v. E. BOON.

### No. 2644.

1. **Specific Performance — Stale Demand.**—The defense of *stale demand* became statutory by article 3209, Revised Statutes, providing: "Any action for specific performance of a contract for the conveyance of real estate shall be commenced within ten years next after the cause of action shall have accrued, and not afterward."

2. **Stale Demand—Exceptions.**—Only the statutory exceptions to the running of limitation, and such other matters as have been held applicable to the defense of limitation, will excuse the failure to bring such suit before the expiration of ten years from the accrual of the action.

3. **Registration.**—An instrument acknowledging an obligation by the maker to transfer land to another, duly acknowledged, may be recorded, whatever its form may be. (See example.)

4. **Testimony of Party to Suit.**—It is competent to admit the testimony of the grantee to the existence and contents of an instrument made by the deceased grantor, the original being lost, in a litigation between such grantee and the heirs of the grantor.

APPEAL from Tarrant. Tried below before Hon. R. J. Boyken, Special District Judge.

The opinion states the case.

*Fields & Jennings* and *Harris & Harris*, for appellant.— 1. The petition does not set forth facts sufficient to justify delay in suing for the length of time it appears therefrom that the delay had been, to-wit, from

1860 to 1887, and the court erred in overruling the exceptions thereto. Taylor v. Campbell, 59 Texas, 315; Glasscock v. Nelson, 26 Texas, 150; Lewis v. Cole, 60 Texas, 341; Smith v. Hampton, 13 Texas, 463; Carlisle v. Hart, 27 Texas, 350; Brown v. Guthrie, 27 Texas, 611.

2.   The instrument of September 18, 1860, being set out as the appellee's title and as the foundation of his claims in his pleadings, it was error to allow Boon to testify as to the existence of, contents of, and consideration of another prior and different instrument claimed to have been made in 1857.   St. L. A. & T. Ry. v. Whittaker & Bonner, 68 Texas, 630, and cases there cited.

3.   The recording of an instrument that can not be regarded as a deed, title-bond, or other written contract in relation to lands can not be regarded as constructive notice to any one of any right asserted by any one claiming under it, and such instrument ought not to be admitted in evidence as a recorded instrument over objection thereto.   Pasch. Dig., art. 4989; Wright v. Lancaster, 48 Texas, 250; Johnson v. Brown, 25 Texas Supp., 126; Rev. Stats., arts. 4351, 4352; Burnham v. Chandler, 15 Texas, 441; Minturn v. Baylis, 33 Cal., 129.

*Hunter, Stewart & Dunklin,* for appellee. — 1. The instrument executed by J. M. Clark to E. Boon September 18, 1860, evidenced a contract in relation to land, and being duly authenticated and recorded was properly admitted in evidence.   Pasch. Dig., art. 4989; Pegram v. Owens, 64 Texas, 475; 1 Pom. Eq., sec. 368.

2.   The plea of stale demand set up by appellant against appellee's claim was fully met and answered by the allegations in appellee's first amended supplemental petition and the proof adduced in support thereof, and the court did not err in refusing to charge the jury thereon.   Reed v. West, 47 Texas, 242; 1 Pom. Eq., sec. 368; Early v. Sterrett, 18 Texas, 113; Holman v. Criswell, 15 Texas, 395; Gibbons v. Bell, 45 Texas, 417; Smock v. Tandy, 28 Texas, 132.

HENRY, ASSOCIATE JUSTICE.—This is an action of trespass to try title to an undivided one-half interest in two hundred and thirteen and one-half acres of land, part of Thomas B. Taylor six hundred and forty acre survey, in Tarrant County, instituted on the sixth day of January, 1887, by appellee.

By a supplemental petition plaintiff charged that one Harris, being the owner of the six hundred and forty acre land certificate by which the location of the land was made, contracted with J. M. Clark to give him a third interest in the land located for his services in making the location, and in consideration of his paying the surveying fees, and that Clark agreed to give plaintiff one-half of his interest if he would make the location and pay all surveying fees.

It is alleged that plaintiff having performed his part of the contract, Clark, on the 18th day of September, 1860, made to him an instrument in writing showing such interest, and intending and attempting to invest plaintiff with the title thereto, which instrument was duly recorded in Tarrant County.

Plaintiff charges that Clark, up to the date of his death, which occurred in 1866, always recognized plaintiff's title, and that after his death his administrator informed plaintiff that no title to the interest had been made to said Clark; that the administrator and heirs of Clark recognized plaintiff's claim as valid, and neither of them set up a hostile claim until the 31st day of March, 1882, at which time the heirs conveyed the whole of the land to defendant's vendor; that notice of said conveyance was fraudulently withheld from plaintiff until the year. 1884, when it first came to plaintiff's knowledge; that the lands were unoccupied until 1886, and taxes were not assessed upon them until 1880; that plaintiff did not know who were the heirs of Clark nor where they resided until 1884, and though he made diligent inquiry he could not until that date ascertain who the owner of the certificate was, and he did not learn before then that any title had been made to Clark, his administrator, or heirs.

Defendant pleaded stale demand and the statutes of limitation of three, five, and ten years.

It was agreed that a patent for the survey was issued on the 13th day of September, 1867, to J. G. Harris, assignee of Thomas B. Taylor, and that the heirs of Harris conveyed 213⅓ acres of the land to the estate of J. M. Clark.

This deed was made to J. W. Greer, as administrator of the estate of J. M. Clark, deceased, and was recorded in Tarrant County on July 24, 1871. The deed records of Tarrant County were destroyed by fire March 29, 1876, and this deed was not rerecorded.

The evidence shows a deed from the heirs of J. M. Clark to J. J. Jarvis dated March 31, 1882, for the land in dispute, and that it was recorded the 15th day of May, 1882; a bond for title from Jarvis to defendant dated September 12, 1883, which was never recorded; a deed from Jarvis to defendant dated March 17, 1886, recorded the 14th day of April, 1886.

Plaintiff read in evidence over the defendant's objection the following instrument:

"DENTON, September 18, 1860.

"There is due E. Boon from me an interest in the following lands, to-wit:  One-half of 1280 acres; my locative interest in the league and labor claim located in Jack and Tarrant; also half my locative interest in the following claims:  Headright of Thomas B. Taylor located in Tarrant County, 640; heirs of James Bradley, in Parker County, one-third league; heirs of A. M. Patton, in Denton and Parker Counties, 320; headright of

W. J. Smith, Jack County, one-third league; headright of B. F. Terry and bounty of same in Jack County; league and labor headright of Allen Hines located in Young and Baylor Counties.

"Attest:                                          "J. M. CLARK.

"J. W. GREER.

"S. F. MAURIE."

Which, having been authenticated as a deed, was recorded in Tarrant County on the 4th day of May, 1877.

Plaintiff testified that he had with J. M. Clark a written contract for locating land certificates, including the J. M. Taylor certificate, by the terms of which he was to pay the surveying fees and locate the land, and Clark was to furnish the certificates and pay the patent office fees, and plaintiff was to have half of Clark's locative interest. This contract was dated in 1857 and was burned in 1860.

Plaintiff located the Taylor certificate in 1857 or 1858 on the land in controversy and paid the surveying fees. After the contract was burned Clark sent plaintiff the instrument set out above. Plaintiff first heard of Clark's death in 1866. Upon Greer's appointment as administrator of Clark, in 1866, plaintiff inquired of him with regard to the land and was informed by him that no papers had come to his hands showing that Clark had an interest in the land.

Plaintiff testified that he did not know that a patent had been issued for the Taylor survey until 1884; that he did not know before that date that the Clark heirs had received a deed, or who owned the Taylor certificate; that between 1870 and 1884 he inquired of the county clerk of Tarrant County if any papers had been filed in his office showing that anybody was claiming the Taylor surveyor; that the clerk replied that no papers had been filed relating to said land; that he first knew that Clark's heirs had conveyed the land to Jarvis in 1884; that in the last named year he procured an abstract of the survey and from it first learned who Clark's heirs were and that they had conveyed the land to Jarvis.

Defendant put in evidence a written contract from Harris, the owner of the certificate, to convey to Clark a one-third interest for locating it, as alleged,

The administrator of Clark, to whom the land was conveyed in his own name, did not convey it to the heirs of Clark, but, as he testifies, "it was turned over to the heirs of the estate." The heirs of J. M. Clark were proved to have lived after his death in the counties of Rains, Hopkins, and Upshur, State of Texas.

The administrator was himself a brother of Clark's first wife. He testified that he did not remember having made to Boon the statements testified to by him. W. A. Clark, a son of J. M. Clark, testified that when he sold to Jarvis he had never heard of plaintiff's claim to the land and had never admitted that he had any interest.

Plaintiff stated that he did not know that he ever paid any taxes on the land, and that on one occasion, when he was in Quitman, Wood County, after J. M. Clark's death, he was shown two little girls, "who they said were Clark's children by his first wife." Plaintiff stated he once inquired of J. J. Jarvis for information about Clark's heirs; that he never inquired of any other person, and of him only once; that he never wrote to his old acquaintances nor to any one else in Quitman inquiring who the Clark heirs were; that he never examined the records himself or employed any one else to examine them; he only asked the clerk, and does not know that he looked through the records; that he does not remember asking the clerk but once, and that was in 1877 or 1878; that he never asked about the taxes but once, and did not look at the assessor's books himself; that Maddox, who he was told was the sheriff, was the person of whom he made the inquiry about the taxes; that he never saw the land in controversy, and that he never wrote to Austin to learn whether or not the land was patented.

The defendant proved that he had occupied the land since his purchase from Jarvis and made valuable improvements on it. The land was proved to be worth from fifty to seventy-five dollars per acre, and to have increased greatly in value recently.

On the issue of title the court charged the jury to find for plaintiff.

There was a verdict and decree for plaintiff for the recovery of the land and for the defendant for the value of improvements.

The defendant appeals, and contends that his plea of stale demand ought to have been sustained, the facts pleaded and proved to account for and excuse plaintiff's delay in bringing suit being insufficient.

With this view of the case we entirely concur.

If there had been no change in our laws in this respect, and the defense of stale demand to actions for specific performance of contracts for the sale of land stood now as it did before the adoption of our Revised Statutes, the excuses for his long delay in bringing his suit urged by defendant would be utterly insufficient, and his pleading setting them up ought to have been held defective on defendant's exceptions.

Plaintiff's cause of action falls clearly within the provisions of article 3209 of our Revised Statutes, reading: "Any action for specific performance of a contract for the conveyance of real estate shall be commenced within ten years next after the cause of action shall have accrued, and not afterward."

In such cases instead of the equitable defense of stale demand the legal defense of limitation is now applicable.

With this change of the law comes also the requirement that instead of answering the plea with the assertion of such excuses for delay as would heretofore have been held by courts of equity a sufficient replication to the defense of stale demand, the reply must now be confined to a state-

ment of the causes that are mentioned in the statutes as suspending the running of limitation, and such other matters as have been held applicable to the defense of limitation. Rev. Stats., ch. 3, title 62.

We think the instrument of writing from Clark to Boon was entitled to record, and that there was no error committed in permitting Boon to testify to the making of the first contract between himself and Clark.

The court erred in charging the jury to find for plaintiff. The cause is reversed and remanded.

*Reversed and remanded.*

Delivered November 1, 1889.