CAROLINA LAGUERENNE ET AL. v. L. J. FARRAR,
ADMINISTRATOR, ET AL.

Decided February 9, 1901.

1.—Limitations—Express Trust.

In 1840 L. conveyed to H. an eleven-league grant of land, and H., owning also
another such grant, executed an instrument by which he conveyed to L. one-
third of the proceeds which he might receive from sales by himself of any
portions of the twenty-two leagues of land and bound his executors and adminis-
trators to convey any part of the lands that might remain unsold at his death
to such persons as L., her husband or heirs, might order. Held, that as to the
proceeds of sales made thereunder, the instrument was not a complete declara-
tion of an express, executed trust against which limitations would not run until
repudiation and notice thereof brought home to the beneficiary, but was an exe-
cuted trust against which the defense of limitations could be interposed.

2.—Same—Repudiation of Trust—Notice.

In order to render the defense of limitations available it is not necessary
that there should be a formal renunciation of the trust by the trustee and
actual notice thereof to the beneficiary, but it is sufficient if his acts are equiva-
lent to a repudiation and the circumstances are such that the beneficiary must
have morally known therefrom that he had abdicated the functions of his office
and was converting the trust property to his own use.

3.—Same—Executory Contract to Convey Land.

In so far as the instrument executed by H. related to the lands unsold at his
death, it was not an absolute conveyance, but an executory contract for the sale
of land, against which the ten years statute of limitations was applicable.

Appeal from Limestone.   Tried below before Hon. L. B. Cobb.

*Kimbell Bros. & Blackman,* for appellants.

*Farrar, Williams & Farrar* and *Sam R. Frost,* for appellees.

TEMPLETON, ASSOCIATE JUSTICE.—On July 28, 1840, George L.
Hammeken, J. T. Laguerenne and his wife, Petra Laguerenne, exe-
cuted an instrument which reads as follows: "Know all men by these
presents: That I, Geo. L. Hammeken, a resident citizen of the Repub-
lic of Texas, do hereby acknowledge to have received from Petra de la
Caudra, wife of John Theodore Laguerénne, the sum of one dollar, for
which consideration and the additional consideration of many impor-
tant services rendered to me by them, I hereby make over, sell and con-
vey to the said Petra Lopez de la Caudra, her heirs, executors, admin-
istrators and assigns, one-third of all moneys which I may hereafter
receive from the sale of any portion or portions of twenty-two leagues
of land, lying and situate in the aforesaid Republic of Texas, which
was originally granted in sale by the government of the State of Coa-
huila and Texas unto Manual Crecencio Rejon and Juan Nepomuceno
Acosta, sixteen leagues of which are situated on the right and left
banks of the rivulet Navasota, the remaining six leagues are situated on
the river Trinity, and for a more particular description of same, I refer
to the authenticated copies of the original deposited by me in the Gen-.

eral Land Office of the Republic of Texas; and should any portion of the aforesaid twenty-two leagues of land remain unsold at my death, I hereby bind my executors, administrators, and assigns to have the same surveyed and to make titles for the same to such person or persons as the said Petra Lopez de la Caudra, her husband, her heirs or assigns, may order. In witness whereof we have hereunto interchangeably set our hands and seals in the city of New Orleans, this twenty-eighth day of July, A. D., 1840."

The said instrument has the following indorsed on the back thereof, viz: "Deed for one-third of twenty-two leagues of land, George L. Hammeken to Petra L. Laguerenne." The instrument and indorsement were written by Hemmeken. The instrument was never recorded. It remained in the custody of Mrs. Laguerenne during her life, and after her death was held by her daughter, Carolina Laguerenne, one of the appellants.

Hemmeken in his lifetime sold 44,133 acres of said lands for $55,477. He died in 1881, and in 1882 L. J. Farrar qualified as administrator of his estate. The administrator sold 6199 acres of said lands for $17,992. Neither Hammeken nor the administrator ever accounted to the Laguerennes or their heirs for any part of the proceeds of the said sales. There are now unsold of said two surveys about 17,500 acres of land.

J. T. Laguerenne died in 1858, and Mrs. Laguerenne in 1880. The appellants are their sole heirs, and brought this suit on March 13, 1899, against the administrator and the heirs of Hammeken to recover the unsold portion of the said surveys and one-third of the proceeds of the sales made by Hammeken. There was a trial by the court without the intervention of a jury, and judgment was rendered for the defendants, from which judgment this appeal is prosecuted.

The two surveys in question, each of which contains eleven leagues of land, were granted by the government of Coahuila and Texas in 1833 to J. N. Acosta and M. C. Rejon, respectively.

On April 11, 1836, M. C. Rejon conveyed the Rejon survey to Mrs. Laguerenne. On the same day Laguerenne executed to Hammeken a power of attorney authorizing him to act for Laguerenne in the sale and management of said survey. On September 27, 1836, Laguerenne and wife, by deed reciting an expressed consideration paid, conveyed the Rejon survey to Hammeken. On July 28, 1840, Hammeken was the owner of the Acosta survey. On that day Laguerenne and wife executed a deed to Hammeken, again conveying to him the Rejon survey. No reason for the making of this second deed is disclosed by the record. Its date is the same as that of the said instrument above set out.

In defense of the suit of appellants for the recovery of one-third of the proceeds of sales made by Hammeken, the appellees interposed a plea of limitations. The appellants, in avoidance of the plea, contend that the said instrument is a completed declaration of an express executed trust, against which limitation will not run until after renuncia-

tion of the trust by the trustee and notice thereof to the beneficiary. On this issue it was shown that Laguerenne and wife and their heirs were citizens of the Republic of Mexico, and resided about 1500 miles distant from the lands in controversy; that the Spanish language prevails in Mexico and the English language in Texas, where the lands are situated and where Hammeken resided; that there was little communication between the two countries; that shortly before Mrs. Laguerenne's death, Hammeken told her that the lands had been lost by litigation and taxation, and that he had never made any sales, and that this was the reason why he had never accounted to her for anything on sales. The appellees did not actually know that these statements were false until within two years before the bringing of this suit, but they never made any effort to learn the facts, and they could have learned the facts many years sooner, had they used reasonable diligence. The circumstances were sufficient to put Laguerenne and wife and their heirs upon inquiry as to the failure of Hammeken to report and account for sales, and the slightest inquiry would have developed the facts, as Hammeken was openly making sales and notoriously treating the lands and proceeds of sales as his own.

The explanation of Hammeken as to why he had never rendered an account of sales was insufficient to impose upon any person of reasonable prudence, or to prevent inquiry. Hammeken's acts for nearly forty years before his death amounted to a repudiation of the trust and of his obligations under said instrument, and the least care for their own interests would have brought home to the Laguerennes knowledge of that fact.

Construed by itself alone, the instrument under consideration, in so far as it relates to proceeds of sales of the lands, appears to be an assignment of one-third of such proceeds. This would be sufficient to create a relation in the nature of a trust between Hammeken and the Laguerennes, but the trust would not be of that character against which limitation would not run. Phillips v. Holman, 26 Texas, 276. The appellants contend, however, that the lands in controversy were in fact the property of the Laguerennes, and that the legal title thereto had been placed in Hammeken for the purpose of facilitating sales, and that the instrument should be construed in the light of such facts. At the time of the execution of the instrument Hammeken held the legal title, and the apparent equitable title, to both surveys. There is nothing in the record to indicate that the Laguerennes ever had any interest whatever in the Acosta survey. They once held the title to the Rejon survey, but had conveyed it to Hammeken about four years before the date of the execution of the said instrument. The only fact in the record which suggests that this conveyance was not absolute in fact as well as in form was the making of the second deed to said survey on the day of the execution of the said instrument. The making of the second deed may have indicated a then existing interest in the Laguerennes in the land, but there may have been other reasons for the act. After the

death of the parties and the lapse of nearly sixty years, presumptions in derogation of the legal title can not be indulged. We are bound to accept only such presumptions as necessarily arise from the facts proven, and we seriously doubt if the bare fact of the making of the second deed contemporaneously with the execution of the instrument demands the presumption that the first deed was not intended to convey title.

But even if we construe the second deed and instrument together and hold that the Laguerennes then had an interest in the Rejon survey, the trust created by the deed and instrument would be, in some sense, executory, since it required action on the part of the trustee, that is, the sale of land and receipt of the purchase money, to vitalize the trust and impose on the trustee an obligation to account to the beneficiary.    But the term "executory trust" is not generally used in this sense; it is usually held to refer to the manner and perfection of creating the trust, rather than to the action of the trustee in administering the same.    A trust is said to be executed when all its terms and limitations are so clear and certain that the trustee has nothing to do but to carry out all the provisions of the instrument according to its letter.    It is not always an easy matter to distinguish between an executed trust and an executory trust.    Without entering upon an extended discussion of the question, we will say that, in our opinion, the trust under consideration was executory, for the reason that the interest of the parties, under the instrument, depended upon contingencies, the happening of which could not be foretold.    The contingencies referred to were the making of sales by Hammeken and the time of his death.    The estate vested in Hammeken was a contingent one; it depended for its extent and limitations upon his opportunities and discretion.    His duties were defined and certain, except as limited by the discretion reserved in making sales, but his interest in the trust property was contingent and uncertain.

Even if it be conceded that the trust is of the charcter contended for by the appellants, still we think that the statute of limitations would run against their demand.    While there was no formal renunciation of the trust by Hammeken and actual notice thereof to the Laguerennes, yet the acts of Hammeken were equivalent to a repudiation of the trust, and the Laguerennes morally knew that he had abdicated the functions of his office and was converting the trust property to his own use.    If appellants or their ancestors ever had a valid claim against Hammeken arising out of the transactions concerning the lands in question, they have, by their own inexcusable neglect, permitted the bar of the statute to accrue against it, and can not now be heard to complain.    Nearly sixty years elapsed between the inception of their alleged right and the assertion of it in court.    They have waited too long, and their claim is forever barred.

To the suit of appellants to recover the unsold portions of said surveys, the appellees pleaded the ten years statute of limitations provided by article 3209, Revised Statutes, the contention being that the suit of

appellants was in effect a suit for the specific performance of an executory contract for the sale of lands. The appellants insist that the instrument evidences an absolute sale of the unsold portions of said surveys which might be on hand at Hammeken's death, and that they can maintain their action of trespass to try title. The instrument does not purport to convey any lands, or to bind Hammeken at any future time to make conveyance. It binds Hammeken's executors, administrators and assigns, in case any of the lands should remain unsold at his death, to have the same surveyed, and to make conveyances thereof to such person or persons as Mrs. Laguerenne, her husband, her heirs, or assigns might order. This language manifestly implies an administration upon Hammeken's estate; an ascertainment of the lands unsold, and a formal conveyance made in accordance with the probate laws, before the Laguerennes were entitled to the possession of such lands. This provision is material, since its application would operate as a protection to the estate. Appellants were entitled to have the contract performed according to its terms, but they can not be said to have been vested with the title to the lands remaining unsold at Hammeken's death. It was evidently the intention of the parties that all the lands should be disposed of in Hammeken's lifetime, since he was to receive two-thirds of the proceeds of all sales, and no interest was retained for his estate in the unsold lands. The clause in reference to the unsold lands was obviously inserted to protect the Laguerennes against loss in the event of Hammeken's unexpected death, and the provisions concerning the surveying of such lands and the making of conveyances were incorporated in the instrument to shield the estate of Hammeken against unfounded claims that might be asserted by the Laguerennes. Even if the representatives of the estate held the title to the land in trust for the Laguerennes, the fact would not prevent the instrument from being a contract to convey lands, and the statute of limitations would nevertheless apply. Chamberlain v. Boon, 74 Texas, 659; Boon v. Chamberlain, 82 Texas, 480.

We conclude that the trial court did not err in holding that the remedy of appellants was by suit for specific performance, and that such suit was barred under the statute. The nature of the trust established by the instrument and the facts surrounding its creation have become so obscured by the lapse of time and the death of the parties, and the beneficiaries in the trust have been silent for so long, that we are not authorized to declare a trust different from the one shown by the terms of the instrument. Standing by itself alone, the instrument is not a completed declaration of an express executed trust, in so far as it relates to the proceeds of sales, and is not sufficient to convey to the Laguerennes the title to the lands remaining unsold at Hammeken's death.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error denied.