# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### MOORE v. FOSTER LUMBER CO.*

#### (Circuit Court of Appeals, Fifth Circuit. March 13, 1916.)

#### No. 2832.

**1. Public Lands** ☞178(1)—Transfer of Headright before Issuance of Certificate.

An instrument, executed by a colonist entitled to a league and labor of land under the laws of the Republic of Texas, purporting to convey one-half of the league and labor of land, and authorizing the grantees to locate and possess it and the land officers to issue the necessary title papers to the grantees, transferred to the grantees the headright of the grantor, though not then evidenced by a certificate, and not located upon any specific public land.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 579; Dec. Dig. ☞178(1).]

**2. Public Lands** ☞178(1)—Transfer of Headright before Issuance of Certificate.

The transfer did not, before location, give the transferee any interest, legal or equitable, in the land not then located, but merely gave a right to have the grantor locate and patent the lands for their benefit, or to accomplish this in their own name and for their own benefit, and, upon location, the right to an interest in the land, either legal or equitable, depending upon whether the patent issued to the original owner of the headright, the owner and his assigns, or the grantees direct.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 579; Dec. Dig. ☞178(1).]

**3. Public Lands** ☞178(1)—Transfer of Headright before Issuance of Certificate.

The right of a grantee under a conveyance by a colonist, entitled under the laws of Texas to a league and labor of land, to locate such land or have it located by the grantor for his benefit, was not a legal interest in land, whether in Texas the common-law distinctions between law and equity were then recognized or not, and the grantee named in a subsequent conveyance by the same grantor acquired no greater interest, even though a certificate had then been issued; the land not having been located.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 579; Dec. Dig. ☞178(1).]

**4. Public Lands** ☞178(1)—Transfer of Headright before Issuance of Certificate.

As between the grantees named in two conveyances by the owner of a headright under the laws of Texas, those to whom it was first conveyed

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

231 F.—1      * Rehearing denied May 20, 1916.

in point of time had the prior right, especially where the second grantee was charged with knowledge of the first conveyance by being a grantee in both conveyances.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 579; Dec. Dig. ☞178(1).]

5. **LIMITATION OF ACTIONS** ☞44(1)—**ACCRUAL OF RIGHT OF ACTION.**

As the conveyance of a league and labor of land which the grantor was entitled to locate under the laws of Texas vested in the grantee no interest in the land prior to its location, the making and recording of a subsequent conveyance by the grantor was a repudiation of the first conveyance, and gave the grantee claiming under the first conveyance notice of the repudiation, and sufficed to start the running of limitation or to fix the time from which the staleness of the claim under the first conveyance was to be reckoned; and, while the grantee under the first conveyance could have proceeded against the grantors or the grantees under the second conveyance, if vested with a legal title, for a specific performance of the trust, such right could only be enforced before the claim became stale, dating from the second conveyance.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 220, 223, 224; Dec. Dig. ☞44(1).]

6. **TRESPASS TO TRY TITLE** ☞25—**EQUITABLE DEFENSES—LACHES OR STALENESS.**

As under the Texas procedure the defendant in trespass to try title may interpose an equitable title or defense, a defendant takes this privilege ordinarily given only to those coming into equity, with the burdens incident thereto in a court of equity, and all defenses available in equity against such equitable title may be set up, and hence the doctrine of laches or staleness is available as against an equitable title interposed as a defense by a defendant in possession.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 30, 31; Dec. Dig. ☞25.]

7. **TRESPASS TO TRY TITLE** ☞25—**STALE CLAIMS—TRANSFER OF HEADRIGHT.**

Where the transfer of a headright was repudiated by the grantor in 1838 by making a second conveyance to other parties and no claim was asserted under the first conveyance for over 60 years, during all of which period there was some assertion of claim under the second conveyance, the claim under the first conveyance had become stale.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 30, 31; Dec. Dig. ☞25.].

8. **TRIAL** ☞253(3)—**INSTRUCTIONS—EQUITABLE DEFENSES—LACHES OR STALENESS.**

Where, in trespass to try title, defendant pleaded an equitable claim or title, to defeat which plaintiff relied upon laches or staleness, and the proof showed the staleness of the claim, the court should either have entertained the defense of staleness and decided it, or submitted the issue to the jury with proper instructions, instead of ignoring such defense in submitting the case to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 616; Dec. Dig. ☞ 253(3).].

9. **TRESPASS TO TRY TITLE** ☞11—**CLAIM OF TITLE UNDER DIFFERENT SOURCES.**

In trespass to try title, defendant's claim of an interest in the land under the same title under which plaintiff claimed did not preclude it from also claiming under a different title, if established as the paramount title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 14; Dec. Dig. ☞11.]

In Error to the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Trespass to try title by B. F. Moore against the Foster Lumber Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

W. D. Gordon, of Beaumont, Tex., and D. F. Rowe, of Houston, Tex., for plaintiff in error.

Sam Streetman and Newton C. Abbott, both of Houston, Tex., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This was an action of trespass to try titles, brought by plaintiff in error against the defendant in error, to recover 429 acres of land out of the John W. Asbury league and labor in Harris county, Tex. The defendant denied plaintiff's title, pleaded title in itself, and also adverse possession of the land sued for under title and color of title for more than 3 years prior to the institution of the suit. The plaintiff replied, to the defendant's assertion of title in it, that such title, if it ever existed, was barred by the statute of limitation of 10 years, and was a stale claim; and also denied the defendant's alleged adverse possession of 3 years.

Title to the land was originally in the Republic of Texas. One John W. Asbury was a colonist in that republic in 1835, and by the Constitution of Texas of 1836, by virtue of that fact, became entitled to a league and labor of public land in the republic. On July 20, 1837, Asbury and wife executed to Isaac Batterson, G. W. Scott, William H. Scott, and James S. Holman an instrument, purporting to convey to Batterson one-half and to the other grantees the remaining one-half of the league and labor of land to which he was entitled as a colonist, authorizing the grantees to locate it and enter upon and possess it when located, and authorizing the land officers to issue to the grantees the necessary title papers. At the time this instrument was executed, no certificate had been issued by the Republic of Texas for the league and labor of land to Asbury, nor had his claim been located on any specific public land. The instrument was recorded May 17, 1838. On March 20, 1838, Asbury executed to James S. Holman and G. W. Scott an instrument, similarly worded, purporting to convey to them jointly one-half of the league and labor of land to which he was entitled as a colonist. This instrument was recorded March 21, 1838. On March 20, 1838, a certificate was issued to Asbury by the proper land officers of the republic for the league and labor of land, to which he was entitled, containing the legal conditions as to payments. On September 4, 1839, a receipt was issued to Asbury for the required payments. On September 21, 1838, or 1839, the certificate was located on the land, a part of which is the land in controversy, upon a survey purporting to have been made for Asbury, by the proper land officers. On the 16th day of January, 1846, a patent was issued by the Republic of Texas, presumably to John W. Asbury, for the league and labor of land, a part of which is here in controversy, but whether or not it ran to his assigns is not disclosed by

the record. This completes the history of the land so far as the proceedings of the land office of the republic relate to it.

The plaintiff claims as grantee of one of two residuary devisees of G. W. Scott. The defendant claims under the other of the two residuary devisees of G. W. Scott, a claim not hostile to the plaintiff, but also claims in hostility to the plaintiff by virtue of quitclaim deeds, executed by the two heirs of W. H. Scott, one of the three grantees of the first conveyance of the headright made by Asbury in 1837. The second conveyance made by Asbury of his headright in 1838 omitted W. H. Scott's name as a grantee, and conveyed the entire half interest to G. W. Scott and Holman.

The determination of the record title to the land depends upon whether W. H. Scott or his heirs or their grantees had any interest in the land involved at the time of the institution of the suit; and this presents the questions as to whether W. H. Scott's title under Asbury's first conveyance of the headright should prevail over that of G. W. Scott, acquired by Asbury's second conveyance thereof, and, if so, whether the W. H. Scott title had, at the time this suit was brought, become a stale claim for lack of earlier assertion. Under the Texas land laws, the owner of a headright could sell his right by verbal or written contract, and in advance of the issue to him of the certificate evidencing his right or of the location of the land. The subsequent issuance of the certificate, location of the land, and issuance of a patent, though in the name of the colonist, inured to the benefit of the grantee, for whom the colonist then held the legal title to the land located.

[1, 2] It follows that the instrument, executed July 20, 1837, by Asbury to W. H. Scott and others was adequate to transfer to the grantees the headright of the grantor, though it was not then evidenced by a certificate and was not located upon any specific public land. This, however, was only a right to a league and labor of land somewhere in the public domain of the Republic of Texas. It is clear that before location, neither the original owner of the headright nor his transferee could be said to have any interest, either legal or equitable, in land not then located. A right to select land from the public domain is to be distinguished from an interest acquired in specific land, when selected. It is manifestly impossible to predicate ownership, either legal or equitable, in unknown lands, to be segregated from the public domain at some future time. The most that can be said of a right acquired before location is that it availed to confer an interest, upon location, either legal or equitable, depending upon whether patent issued to the original owner of the right on the one hand, or to the owner and his assigns or the grantee direct on the other hand.

[3, 4] It seems clear that W. H. Scott, by virtue of the conveyance of July 20, 1837, acquired no interest, either legal or equitable, in the lands afterward selected, until they were, in fact, located in September, 1838, or 1839. His only right, theretofore, under the instrument was either to have Asbury locate and patent lands for his benefit, or to accomplish this in his own name and for his own benefit. This right was not a legal interest in land, whether the Republic of

Texas recognized, prior to 1840, the common-law distinctions of law and equity or not. So that, on March 20, 1838, when Asbury executed the second conveyance, which omitted W. H. Scott as one of the grantees of his headright, W. H. Scott had no legal interest in the land, upon which the certificate might thereafter be located. It is true that the grantees, named in the second conveyance of the headright, acquired no greater interest thereby, since the second conveyance was in identical language in legal effect, and this would be true whether the certificate, which was issued to Asbury the same date, be construed as having been issued to him before or after the second conveyance was executed by him, for there was no location of the certificate at that date, nor until September, 1838, or 1839. Neither W. H. Scott nor G. W. Scott acquired any legal or equitable interest in the land until it was surveyed in September, 1838, or 1839. As between the two grantees, each having received from Asbury the same right in his headright, the first to whom it was conveyed in point of time would have the prior right, especially where, as in this case, the second grantee was charged with knowledge of the first conveyance, by being a grantee in it, as well as in the second. Johnson v. Newman, 43 Tex. 639.

If the title depended alone upon the status as of the time immediately subsequent to the execution of the second conveyance by Asbury, our conclusion would be that the defendant's predecessor in title became invested with either the legal or equitable title to the land upon the subsequent location of the land and issuance of the patent to Asbury, depending upon whether or not the patent ran to his assigns.

[5] However, the making of the second conveyance by Asbury of his headright, omitting W. H. Scott as grantee, is to be held, in the light of the decisions of the Texas courts, to have been a repudiation of his original transfer to W. H. Scott; no interest in the land itself having, at that time, vested in W. H. Scott, so as to make repudiation by him legally impossible. The placing of the second conveyance by Asbury on record, the day succeeding its execution, was notice to W. H. Scott that Asbury had repudiated any trust relation arising between them by virtue of the first conveyance, and sufficed to start the running of the statute of limitation or to fix the time from which the staleness of the claim under the W. H. Scott title was to be reckoned. Abernathy v. Stone, 81 Tex. 433, 16 S. W. 1102; Chamberlain v. Boon, 74 Tex. 659, 12 S. W. 727; Johnson v. Newman, 43 Tex. 629. In view of this repudiation by Asbury, his subsequent acts in having the certificate issued to him, the lands located and the patent issued are to be construed as having been done, not in the interest of W. H. Scott, but in that of the subsequent grantees of the headright under the second conveyance. And while it is true that W. H. Scott could have proceeded against Asbury or against the grantees under the second conveyance, if vested with a legal title, for a specific performance of the trust he had wrongfully repudiated by making the second conveyance, yet such a right could only be enforced before the claim had become stale, dating its inception and accrual from the date of the repudiation effected by the second conveyance of the headright by

Asbury. If there was no assertion of the right to enforce the repudiated trust either against Asbury or against his subsequent grantee, until the claim had become stale, then, at that time, at least, Asbury and his heirs, if the patent ran to him alone, would be considered as holding in trust the legal title for his subsequent grantee; or, if it ran to him and his assigns, the legal title, from that time on, would be in the subsequent grantee of the headright or his privies. Indeed it seems to be a rule of property in Texas that the legal title to land on which a certificate is located vests, immediately upon location and issuance of patent, in the then beneficial owner of the certificate, whether he acquired it by verbal or written transfer, and without respect to the rules governing the technical devolution of legal title.

[6] It is said, however, that the principle of staleness of claim is not available as against one in the position of a defendant in an action of trespass to try titles, who is in possession of the land sued for, and who is asking no affirmative relief. However, we are of the opinion that the defendant was in the equivalent situation of a holder of an equity, asking affirmative relief, though it was in possession and defending. Under the Texas procedure, the defendant is permitted to interpose an equitable title or defense, in an action in trespass to try titles. At common law the holder of an equitable title was not accorded this privilege, but was required to resort to a court of equity to establish his equity, and to restrain the suit at law, in which the legal title would otherwise have prevailed. The Texas procedure, permitting the equitable defense to be interposed in the action at law, relieves the defendant of the necessity of resorting to equity for affirmative relief, its purpose being to avoid circuity of action; but it cannot have been intended to affect the substantive relative rights of the contending parties. As the defendant in the action of trespass to try titles, under the Texas practice, is accorded privileges ordinarily only given those who go into equity, it should follow that the defendant should receive such privileges only with the burden incident thereto in a court of equity, and that all defenses which would be encountered in a court of equity in an effort to establish the equitable as against the legal title should obtain in a forum which was made the equivalent of a court of equity, by having conferred upon it jurisdiction to entertain equitable titles and defenses. This was, in effect, the holding of the Supreme Court of Texas in the case of Robertson v. Du Bose, 76 Tex. 8, 13 S. W. 300. That was an action in trespass to try titles. The defendant relied upon an equitable title. The plaintiff pleaded that the claim based on the defendant's equity was stale. The court entertained the counter defense, based on the alleged staleness of the asserted equitable title, determining that, as there had been no repudiation of the equity by the holder of the legal title, until shortly before the defense based on it was interposed, the claim was, in point of fact, not stale. The court said:

"The objection that the claim of defendant was stale was not a good ground for excluding the instrument from the jury as evidence. The same objection was more appropriately raised by the pleadings and by charges requested by appellant and refused by the court."

In overruling the defense of staleness, the court said:

"There being no repudiation of the trust until this sale, we think the doctrine of laches, or stale claim, had no application until then, and even then the nature of the transaction was not such as to address itself to the favorable consideration of a court of equity, to which the pleading and charges under consideration are addressed."

From this it is clear that the doctrine of laches or staleness is available, when established by the facts, in an action of trespass to try titles in a Texas court, as against an equitable title, interposed as a defense to the action. The cases of Cox v. Bray, 28 Tex. 247, and Johnson v. Newman, 43 Tex. 639, contain expressions in conflict, but we adhere to the later expression of the court in the case quoted from.

[7] The evidence in this case showed without conflict a repudiation by Asbury, who was the original owner of the headright, of his conveyance of July 20, 1837, to W. H. Scott of an interest in it, accomplished by his second conveyance of March 20, 1838, to G. W. Scott and Holman alone. No claim was asserted by W. H. Scott or his heirs to the lands from that date until his heirs conveyed to Simpson in 1899. Possession was first taken by defendant only a short time before this suit was brought. The time in which a claim becomes stale in Texas is, by analogy to its statute of limitation, a period of 10 years. Chamberlain v. Boon, 74 Tex. 659, 12 S. W. 727. In this case, a period of 60 years or more elapsed from the date of repudiation to the first assertion of claim by the heirs of the first grantee of the headright. There was at least some assertion of claim under the G. W. Scott title during all that period. Upon the undisputed facts in the record, we think the claim under the W. H. Scott title had become stale by the failure to assert it, during this long period of time, before possession was taken or ownership exercised under it.

[8] In view of the undisputed character of the proof upon the issue of staleness of claim, it seems unimportant to decide whether the defense of laches, or staleness of claim, interposed in an action of trespass to try titles, is addressed to the judge as a court of equity, as intimated in the last-quoted excerpt from the case of Robertson v. Du Bose, supra, or is to be tried by the jury like other issues of fact.

In this case the District Judge charged the jury that the title to the lands in controversy was in the defendant by virtue of the conveyance of an interest in the headright by Asbury to W. H. Scott on July 20, 1837, unless the jury should find that W. H. Scott subsequently conveyed his interest in the headright to G. W. Scott. The plaintiff excepted to this part of the charge, upon the ground, among others, that it ignored the defense of staleness of claim as against the claim under the conveyance of July 20, 1837, and assigns error here, based on this exception. We think the court below should either have entertained the defense of staleness of claim itself and decided it, or have submitted the issue, presented by it, to the jury, with proper instructions, for them to determine.

[9] As the defendant connected itself with the outstanding title alleged to have been in W. H. Scott and his privies, we do not think that it would have been precluded from relying upon that title, by rea-

son of its also claiming an interest through the G. W. Scott title, if the former had been established as the paramount title.

The judgment is reversed, and remanded for further proceedings in conformity to this opinion.