### McNAIR v. MOORE.

1. Fraud—Homestead—Debtor and Creditor.—When a debtor transfers his equitable interest in lands to his wife without valuable consideration, who completes the payment of the purchase money and takes the legal title, such transfer over and above the husband's homestead exemption is a fraud upon his creditors.

2. Homestead—Purchase Money.—Money borrowed by A. of B., and by B. applied to the payment of the purchase price of land bought of a third party, is not a contract for the purchase money of the land, in the sense of the homestead law.

Before Gage, J., Darlington, April, 1901.   Modified.

Action by S. P. McNair against Jno. W. Moore and Julia C. Moore. The Circuit decree is as follows:

"This is an action to subject certain lands to the payment of a judgment recovered by plaintiff against the defendant, J. W. Moore. The legal title to the lands is held by the defendant, Julia C. Moore. The defendants are husband and wife. The testimony was taken by the master and he reported it without any finding. The judgment is for $3,490.69, and was recovered 13 April, 1899. The subject of that action was a debt due by J. W. Moore to the plaintiff. Evidenced by five notes dated 1 January, 1894. Those notes were executed to secure the payment of the balance on a running factors' account btwixt the plaintiff and J. W. Moore, commencing December, 1886.

"On 21 December, 1886, the defendant, J. W. Moore,

made with Lewis M. Coker a contract in writing to purchase 530 acres of land for the price of $2,250, payable in instalments. Thereafter J. W. Moore made sundry payments on the purchase price as follows, to wit:

| | | |
|---|---:|---:|
| 1886, 21 December, L. M. Coker.. | $500 00 | |
| 1886, 21 December, L. M. Coker.. | 107 00 | |
| 1888, 4 January, L. M. Coker.... | 455 00 | |
| 1889, 2 February, L. M. Coker... | 200 00—$1,262 00 | |
| 1890, 3 February, W. C. Coker, executor .................... | 75 00 | |
| 1891, 25 April, W. C. Coker, executor ...................... | 301 69— | 376 69 |
| | | $1,638 69 |

"Thereafter the defendant, Julia C. Moore, claims to have made sundry payments on the purchase price as follows, to wit:

| | |
|---|---:|
| 1892, 10 June, W. C. Coker, executor ...................... | $315 00 |
| 1893, 12 August, W. C. Coker, executor ...................... | 303 97 |
| 1894, 19 May, W. C. Coker, executor ...................... | 210 00 |
| 1896, 17 February, W. C. Coker, executor ...................... | 379 82—$1,208 79 |

"The contract for the purchase of the land provided for payment of the price as follows, to wit:

| | |
|---|---:|
| 1887, 1 January, to cash........ | $500 00 |
| 1888, 1 January, to cash......... | 437 50 |
| 1889, 1 January, to cash......... | 437 50 |
| 1890, 1 January, to cash......... | 437 50 |
| 1891, 1 January, to cash......... | 437 50—$2,250 00 |

"The deed was made on the      day of   ,  1896, and was recorded 21 July, 1896. It was made by W. C. Coker, the executor of L. M. Coker, deceased, to Julia C. Moore. It recited the contract for purchase and sale and declared: 'Whereas, the said John W. Moore, by sundry payments

made to the said L. M. Coker during his lifetime, and since his death to the executors of the last will and testament of said L. M. Coker, has completed the payment of said sum of $2,250, with interest: now, etc.'

"It was admitted by the defendant, John W. Moore, that he made four separate payments on the purchase to L. M. Coker and two payments to W. C. Coker, executor, all aggregating $1,638.69. And the same defendant further swore, that the first three payments, aggregating $1,062, were made directly with cash received by him at the hands of the plaintiff.

"The contention of the defendants is this: that after the husband had paid $1,638.69, he abandoned the contract of purchase; and the wife then made a new contract of purchase, paid $1,208.79, and pursuant to such new contract took the deed to herself.

"The verified answer of Julia C. Moore alleges: 'Her husband was unable to pay for the premises, and *would have been compelled* to forfeit his contract, and proposed that he would surrender his claim and turn the land over to this defendant if she would pay the balance of the purchase money.' The *italics* are my own. The verified answer of John W. Moore is in practically the same language. Granting that such was the purpose of the defendants, the executor of Coker concurring, the only effect of it was to *continue* the contract, but substituting therein the name of the wife for that of the husband. The interest therein of the husband had been fixed by the contract and his payments thereon; and the law prohibited him to *give* that interest to his wife, if he then had creditors and nothing to pay them; and especially did the law prohibit him, if his *intent* was to avoid the payment of those creditors. The testimony satisfies me that the husband did in effect make the voluntary transfer of his valuable interest to the wife, and that his *intent* was to save for her and him a home at the expense of his creditors. The last payment made by him was *after* the maturity of his debt, so that the executor did indulge him, and was not dis-

posed to cut him off.    The testimony would not warrant the conclusion that the wife knew her husband's intent, nor would it warrant the conclusion that the four payments, aggregating $1,208.79, were made by the husband or with his money.    The wife swears she did not know of any wrongful intent on the part of her husband, and she swears the $1,208.79 was paid by her and out of her own earnings. There is no sufficient testimony to overcome her own on those issues.

"The case stands as if the husband, who had the equitable title to the land, had with a wrong intent sold the same to his wife for $1,208.79, a grossly inadequate price.    The land is liable to plaintiff to the extent of $1,638.69, the amount invested therein by John W. Moore, and unless that sum is paid by the defendants to the plaintiff, the plaintiff is entitled to have the same sold to realize assets.    The wife having bought in good faith, is entitled to be paid back the money she expended.    She holds the legal title to the whole, and the equitable title to a part; the husband never had legal title and only equitable title to a part.

"It is, therefore, ordered, that the land described in the complaint be sold; and out of the proceeds the defendant, Julia C. Moore, be first paid the sum of $1,208.79; and that out of any balance the plaintiff be paid the amount of his judgment, if there be sufficient for that purpose; and if there be still a surplus, let it be held subject to the further order of this Court."

Both plaintiff and the defendants appeal.

The plaintiff, on the following exceptions:

"It is respectfully submitted that his Honor erred in the following respects, to wit:

"I. In holding that the testimony would not warrant the conclusion that Mrs. Julia C. Moore knew J. W. Moore's intent in transferring to her the land in dispute, when the clear inference to be drawn from the testimony was that she knew what his purpose was, to wit: to defraud his creditors

by securing an advantage to themselves at their creditors' expense, and co-operated with him in carrying it out.

"II. In holding that the testimony would not warrant the conclusion that the four payments aggregating $1,208.79 were made by the husband or with his money, or that any part thereof was made by him or with his money; whereas, the testimony shows that a large part, if not all of it, was made by the defendant, J. W. Moore. That not more than $350 of said amount was furnished by Mrs. Julia C. Moore.

"III. In not holding that Mrs. Julia C. Moore knew of and participated in the fraud practiced by J. W. Moore on his creditors, in surrendering to her valuable real estate without any valid consideration therefor.

"IV. He erred in not holding that the arrangement between J. W. Moore and Julia C. Moore, by which he transferred to her his interest in the land, and then rented it back from her at sufficient rental value to pay the balance due on the place, was pretensive and fraudulent, and in not holding that the payments made under this arrangement were made by J. W. Moore and with his money. That his skill and management and his capital earned the payments made, and that it belongs to his creditors.

"V. That if his Honor meant to hold that plaintiffs could only recover $1,638.69 out of land, and that defendants by paying that amount could retain the land, would not have to account to plaintiff for all of the value of the land except the $1,208.79, which he found to be due Mrs. Julia C. Moore, he erred in so doing.

"VI. He erred in not holding, unless he did so hold, that only what was due Mrs. Julia C. Moore, if anything was due her, should first be paid to her and the balance should be applied to plaintiff's judgment."

The defendants, on the following grounds:

"I. Because his Honor erred, as it is respectfully submitted, in holding, in effect, that the conduct of the defendant, John W. Moore, in allowing his wife to pay the balance of

the purchase money on his contract and to take the title to the land in question, was a fraud upon his creditors, it being clearly evident from the testimony that such was not the case.

"II. Because the arrangement whereby Mrs. Julia C. Moore assumed the payment of the balance of the purchase money and acquired title to the land, operated in no sense as a gift from her husband to her of said land, or any interest therein, in fraud of his creditors, and his Honor was in error in not so holding.

"III. Because there was no fraudulent intent on her part, as properly held by his Honor, at the time the arrangement was made whereby Mrs. Moore was to pay the purchase money and obtain title; it clearly appearing that her husband had failed to comply with the contract of purchase, was holding at the will of the vendor or his executors, owned no interest which he could confer by gift upon his wife, and his Honor erred in not so holding, and dismissing the complaint accordingly.

"IV. Because his Honor should have held that there was valuable consideration on the part of Mrs. Moore in making the arrangement whereby she was to assume the payment of the purchase money, and that there was no gift from the husband to the wife in fraud of the plaintiff, and should have dismissed the complaint accordingly, there being, at least, no intent on the wife's part to defraud the plaintiff.

"V. It is respectfully submitted that from the circumstances and the testimony it is evident that there was no fraud on the part of Mrs. Moore, and his Honor having held that her dealings were *bona fide* and based upon a valuable consideration, should have dismissed the complaint as a necessary consequence.

"VI. Because, even if correct in holding that the land was liable to the extent of $1,638.69, which he found to be invested therein by J. W. Moore, he erred in ordering and decreeing that any greater sum to be realized from the pro-

ceeds of sale than the sum so found be applied to the plaintiff's judgment against the said John W. Moore.

"VII. Because his Honor should have held that it was not made to appear from the evidence that any transfer by John W. Moore was detrimental to the rights of the plaintiff, there being no proof that at the time the transaction was done whereby Mrs. Moore assumed payment of the balance, that John W. Moore had any interest in the premises exceeding in value the homestead exemption.

"VIII. Because, if correct in ordering and decreeing that the premises be sold, his Honor was in error in failing and refusing to order that the homestead be first set apart as required by law to the extent of $1,000.

"IX. Because his Honor should have held that there was no proof of fraud upon the part of either of the defendants; but having held that there was an intent upon the part of John W. Moore to put his interest in the property beyond the reach of his creditors, and that Mrs. Moore had no complicity with him in such purpose, that her transactions were *bona fide* and free from the charge of fraud and based upon a valuable consideration, his Honor should have dismissed the complaint and confirmed her legal title to the premises."

*Messrs. Boyd & Brown* and *Stevenson & Matheson,* for plaintiff, appellant.

*Mr. Brown* cites: *Transfer to wife is fraud on husband's creditors:* 56 S. C., 170; 2 Hill Ch., 31; 35 S. C., 437; 11 Am. St. R., 759. *The equitable interest of the husband is transferable to the wife:* 12 Rich. Eq., 345; 8 Rich. Eq., 155; 28 S. C., 152. *Question of homestead not raised below, cannot be considered here:* 23 S. C., 75; 41 S. C., 311; 44 S. C., 16.

*Messrs. Stevenson & Matheson* cite: *Transfer to wife is fraud on husband's creditors:* 1 Hill Ch., 292; 18 S. C., 527; 56 S. C., 169; 42 S. C., 487; 41 S. C., 427; 1 Strob.

Eq., 66; 24 S. E. R., 437; 2 Bail., 126. *Husband had no homestead exemption in premises at time of transfer:* 5 S. C., 499; 24 S. C., 35, 71. *Wife only entitled to what she put into the land:* 27 S. C., 105.

*Messrs. Woods & Macfarlan,* for defendants, appellants, cite: *Labor, industry and talents of husband are not subjects of execution:* 54 S. C., 91; 8 Rich., 56; Wait on Fraud. Con., 303; 44 N. Y., 344. *Residence of husband with wife on land after transfer is not badge of fraud:* 34 S. C., 416; 56 S. C., 170. *Husband had no such interest in land before transfer as creditor could acquire:* 2 Rich., 542; 28 Ency., 121; 90 Am. Dec., 555; 74 Am. Dec., 490. *As to inferences of fraud:* Wait on Fraud. Con., sec. 232; 8 Ency., 760; 21 S. C., 270. *Plaintiff must show that at time of transfer husband's interest in property exceeded his homestead exemption:* 27 S. C., 434; 55 S. C., 198; 58 S. C., 280.

April 19, 1902. The opinion of the Court was delivered by

Mr. Justice Jones. The object of this action was to subject lands held by Julia C. Moore to the payment of a judgment against her husband, John W. Moore. It appears that in January, 1894, defendant, J. W. Moore, executed his notes to plaintiff to secure payment of a balance on account commencing in December, 1886, and that in April, 1899, plaintiff recovered a judgment thereon for $3,490.69. In December, 1886, the defendant, J. W. Moore, went into possession of the land in question under a contract in writing to purchase same from L. M. Coker in certain specified instalments, and holding L. M. Coker's bond for title to be executed upon the payment of the sum of $2,250, with annual interest. Between the 21st December, 1886, and April 25, 1891, John W. Moore made payments to L. M. Coker and to his executor, W. C. Coker, aggregating $1,638.69. Thereafter, in 1892, an arrangement was made between John W. Moore and his wife, with the consent of Coker's executor,

under which Mrs. Moore undertook to pay the balance of the purchase money upon condition that title to the premises be made to her; and pursuant thereto Mrs. Moore made payments in full of said balance, aggregating $1,208.79, and in 1896 received from Coker's executor a deed of the land in her name. The Circuit Court found that John W. Moore did in effect make a voluntary transfer of his equitable interest in the land to his wife, with intent to save for her and himself a home at the expense of his creditors, but that the wife was not cognizant of any wrongful intent on the part of her husband. The Court further held that Mrs. Moore having paid the balance of the purchase money in good faith, should receive back the money so expended. Accordingly, decree was made that the land be sold, that out of the proceeds Mrs. Moore be first paid the sum of $1,208.79, and that out of the balance, if sufficient for that purpose, the plaintiff's judgment be paid.

Both sides appealed from this judgment. For a more detailed statement of the facts reference may be had to the decree herewith reported, along with the exceptions thereto. Under the view we take of the case, it will not be necessary to examine the exceptions in detail.

We concur with the Circuit Court that the arrangement under which Mrs. Moore became the beneficiary of the payments made by her husband was a voluntary transfer by the husband to the wife, of his equitable interest in the land; but the Circuit Court erred in failing to take into consideration to what extent such transfer affected the rights of the husband's creditors. The case of *Finley* v. *Cartwright,* 55 S. C., 198, shows that an insolvent husband may, as against his creditors, convey his homestead to his wife, for the reason that such homestead is not subject to, but is expressly exempt from debt not for the purchase money. The case of *Munro* v. *Jeter,* 24 S. C., 29; overruling *Garaty and Armstrong* v. *DuBose,* 5 S. C., 493, shows that a homestead may be claimed in land held under an equitable title only. Whatever property of a debtor may in law

or equity be subjected to the payment of his debt is likewise subject to the debtor's homestead right. By sec. 28, art. III., of Constitution, a homestead may be in lands, "Whether held in fee or in a lesser estate." It is argued that this question was not considered by the Circuit Court and ought not to be considered here; but such consideration ought to have been had, as it was necessarily involved in properly determining the question of fraud and the right of the creditor to subject such property to his debt. It is further argued, that a large part of the debt due plaintiff was for money used in paying the purchase price, and that there is no right of homestead against such a debt. The complaint shows that the debt was for an account for money and supplies to enable Moore to conduct a business in turpentine. Even if defendant did in fact use some of the money so advanced in making payments of the land, the debt contracted by him with plaintiff was not for the purchase money of the land, in the sense of the Constitution. Therefore, to the extent that the homestead right of J. W. Moore, who by the record appears to be the head of a family resident in this State, covers the equitable interest which he had in the premises which he transferred or conveyed to his wife, there could be no fraud and no violation of the right of creditors. Creditors were only affected to the extent that the value of J. W. Moore's equitable interest at the time of the transfer to his wife exceeded $1,000, the amount of his right of homestead, and to this extent only should the land have been subjected to the payment of plaintiff's judgment.

The judgment of the Circuit Court is modified, and the case is remanded, with instructions to ascertain the nature of J. W. Moore's equitable interest in the land at the time of the transfer thereof to Julia C. Moore, and to subject said land to the claim of plaintiff only to the extent which the value of the equitable interest exceeded $1,000, the value of his right of homestead.