## SKIDMORE v. FIRST NAT. BANK OF DETROIT. (No. 2862.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 15, 1924. Rehearing Denied March 6, 1924.)

1. **Bills and notes** ⬅371—**Vendor and purchaser** ⬅261(4)—**Effect of vendor's lien notes given for accommodation in hands of indorsee for value though with notice stated.**

Where transfer of land and execution of vendor's lien notes by transferee was merely for accommodation of vendor to enable him to borrow on land, bank taking notes for value though with notice could enforce them against both accommodation maker and land; no rights of creditors intervening.

2. **Fraudulent conveyances** ⬅282—**Burden on creditor to prove notice to transferor of fraudulent intent of vendor.**

Creditor of vendor has burden of proving notice to bank paying value for vendor's lien notes executed as part of simulated transaction to enable vendor to borrow money of vendor's intent to hinder, delay, or defeat claims of existing creditors within Rev. Civ. St. art. 3966.

3. **Fraudulent conveyances** ⬅301(1)—**Evidence held sufficient to show lack of notice to transferee of fraudulent intent of vendor.**

Where transfer of land and execution of vendor's lien notes were solely for accommodation of vendor, to enable him to borrow money, evidence *held* sufficient to support finding that bank taking such notes for value did not have notice of any intent by vendor to defraud creditors by such transaction.

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Suit by the First National Bank of Detroit against G. W. Boulware, in which J. P. Skid-more intervened, and his garnishment proceeding against the same defendant was consolidated. Judgment for plaintiff, and intervener appeals. Affirmed.

Dodd & Chambers, of Clarksville, and George P. Blackburn, of Paris, for appellant.

Lennox & Lennox, of Clarksville, and Prentice Wilson, of Dallas, for appellee.

HODGES, J. This suit involves a question of priority between the different liens claimed by the appellant and the appellee on 10 tracts of land owned by J. P. Ward and situated in Red River county. It appears that on July 3, 1922, the appellant recovered a judgment against Ward for the sum of $814.45, together with the accrued interest and attorneys' fees. On the 8th day of the same month an abstract of this judgment was filed in the office of the county clerk of Red River county. In September following the appellant sued out a garnishment writ against one G. W. Boulware, upon the ground that the latter was indebted to Ward. The garnishment suit was No. 13020 on the docket of the district court of Red River county. Boulware answered, denying that he was indebted to Ward, and setting up, in substance, the following facts: That on January 18, 1921, Ward and wife conveyed to him (Boulware) 10 tracts of land situated in Red River county; that the deed recited a cash payment of $15,000 and $28,500 in notes executed by Boulware reserving a vendor's lien against the land; that about the 1st of May, 1921, Boulware executed and delivered to Ward a deed reconveying the land. Boulware asserted that he never placed the deed from Ward to him on record, or authorized any one else to do so; that he executed the notes, but paid no part of the cash consideration recited in his deed from Ward; that the deed was a bogus transfer made to enable Ward to borrow money on the land. He further alleged that the appellee, the First National Bank of Detroit, claimed to be holding his notes to Ward as collateral to secure some kind of debt, and charged that appellee had full notice of the fraudulent character of the transaction, and asked that the appellee be made a party defendant to the garnishment suit. The bank answered with demurrers and a general denial.

On November 8, 1922, the bank filed a suit against Boulware on the notes referred to above, seeking a personal judgment against Boulware and a foreclosure of the vendor's lien evidenced by the notes. That suit was docketed in the district court as case No. 13080. It was alleged by the bank, as the basis of the action, that it held the notes of Boulware, together with some others, as collateral security for an indebtedness due by one L. W. Ward, amounting to something over $12,000; that this collateral was taken

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in due course of trade, without any notice of any defects or infirmities, and upon the surrender of other valuable collateral held for the security of the debt of L. W. Ward. Boulware answered in that suit substantially as in the garnishment proceedings. Ward also filed a formal answer. The appellant, Skidmore, intervened in this last suit, set up his judgment lien against the land, and charged that the conveyance of Ward and wife to Boulware was made for the purpose of hindering, delaying, and defrauding Ward's creditors; that he (Skidmore) was a creditor at the time of the conveyance of the land, and that appellee had actual notice of the fraud attempted by Ward when it acquired the notes; that if it did not have actual notice of the true nature of the transaction it had sufficient notice to put it upon inquiry.

Some time later the two suits were consolidated and tried before the court without a jury. A judgment was rendered ordering a foreclosure of both liens—that of the appellant, and also that of the appellee—but giving the lien of the appellee priority of payment from the proceeds resulting from the sale of the land. From that judgment the appellant Skidmore has appealed.

The court filed findings of fact and conclusions of law, of which the following is the substance: On January 20, 1921, J. P. Ward and wife conveyed the land in controversy to Boulware by a deed reciting a cash payment of $15,000 and the execution of six promissory notes, the first for $16,000, due January 1, 1922, and five other promissory notes for the sum of $2,500 each, due in annual installments beginning with January 1, 1922. These notes were in the usual form of vendor's lien notes given for the purchase of land. The conveyance from Ward and wife to Boulware was simulated and the execution of the notes by the latter was for the accommodation of Ward, to enable him to secure a loan of money on his land. On or about the 1st of May, 1921, Boulware reconveyed the land to Ward, and on or about May 24, 1921, after the reconveyance, Ward indorsed and assigned the notes to the appellee bank without recourse and before maturity. The notes were accepted by the bank in good faith and without any notice of the real nature of the transaction and for the purpose of securing a note of L. W. Ward then held by the bank. Upon the receipt of the notes of Boulware the bank released other valuable collateral which it theretofore held as security for the L. W. Ward indebtedness. The court also found that Ward was indebted to Skidmore as alleged, and that Skidmore's judgment had been abstracted and recorded as required by law. In addition to this he found that Boulware was not indebted to Ward in any amount at the time the garnishment writ was issued and served.

[1] The judgment in this case is assailed mainly upon the ground that the evidence conclusively shows that the conveyance from Ward to Boulware and the execution of the notes in connection therewith was a transaction by Ward to hinder, delay, or defraud his creditors; that Skidmore was a creditor of Ward at that time, and when the appellee bank acquired possession of the notes it had knowledge of facts sufficient to put it upon notice of the fraudulent purpose of Ward. The evidence shows that the appellant's debt had not at the time the bank acquired Boulware's notes been reduced to a judgment, and his claim to priority of lien by reason of his judgment depends solely upon the ground that Ward's conveyance to Boulware was fraudulent as to him. It must be conceded that as between Ward, Boulware, and the bank the latter acquired a valid claim to a debt against Boulware, the maker of the notes, and a valid lien against the land owned by Ward, even though the bank took the notes with notice that the transaction out of which the notes and lien grew was only a device to enable Ward to borrow money on his land. Boulware's notes, although executed for the accommodation of Ward, were, in the hands of a third party, binding obligations at least to the extent of the debt pledged to secure, or the consideration paid for them, even though the bank had notice of the circumstances and conditions under which the notes were made. King v. Parks, 26 Tex. Civ. App. 95, 63 S. W. 900; 2 R. C. L. pp. 1068, 1069; Jones on Pledges and Collateral Securities (2d Ed.) § 673.

In Ruling Case Law, cited above, the following language is used:

"No consideration moving to the accommodation maker is necessary to uphold an accommodation note. The very name of the paper suggests this. The consideration in such case which supports the promise of the accommodation maker is that parted with by the person taking the accommodation note and received by the person accommodated."

[2] In this instance Ward was the person accommodated, and the evidence showed that he received a consideration from the bank for the assignment of the notes as collateral security for his father's debt. Ward had a right to resort to that indirect method of incumbering his property if the rights of no existing creditor intervened. Under the provisions of article 3966, Rev. St., such a conveyance would be invalid only in the event it operated to hinder, delay, or defeat the claims of existing creditors; but in order to have that effect the mortgagee or transferee must have notice of the fraudulent intent. Of course that requirement implies that a knowledge of facts which would put an ordinarily prudent business man upon notice of the fraud would be sufficient, but in such cases the burden of proving notice is on the creditor. Tillman v. Heller, 78 Tex. 597, 14

S. W. 700, 11 L. R. A. 628, 22 Am. St. Rep. 77; Le Page v. Slade, 79 Tex. 473, 15 S. W. 496.

In the first case above referred to Justice Gaines, rendering the opinion of the court, after quoting a provision of the statute, said:

"The order of these several provisions seems to indicate how it was intended the burden of proof should shift during the progress of the trial: (1) The creditor, in order to defeat the conveyance, is bound to show the fraudulent intent; (2) when such intent is shown, the purchaser, in order to sustain the transaction, must show that he has paid value; (3) this ,being shown, the burden again, shifts, and the creditor, in' order to prevail in the action, must prove that at the time of the payment the purchaser had notice of the fraud. This seems to us the most reasonable and satisfactory rule."

[3] We have examined the evidence in this case, and conclude that it is sufficient to support the findings made by the trial court. T. P. Guest, the cashier of the appellee bank, who conducted the transaction by which the notes were acquired as collateral security, testified that he did not know the extent of Ward's indebtedness at the time he took the notes, and inferentially he denies knowledge that Ward was at the time insolvent. While he admits facts which tend to show notice that the real purpose of the transaction between Ward and Boulware was intended solely for the purpose of enabling Ward to borrow money on his land, notice of that fact is alone not sufficient. It must further appear that either the cashier or his principal had notice that the purpose and effect of that transaction would be to defeat, delay, or defraud creditors existing at the time.

The judgment will therefore be affirmed.