## FIRST NAT. BANK OF DETROIT v. SKIDMORE et al. (No. 2961.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 4, 1924. Rehearing Granted Jan. 8, 1925.)

1. **Fraudulent conveyances ⬅308(1)—Whether debtor's conveyance was fictitious and intended to delay creditors, and whether bank accepting purchase-money notes as collateral knew of such intent, held for jury.**

Whether debtor's alienation of land was fictitious and to hinder and defraud creditors, and whether bank receiving purchase-money notes given to debtor as collateral securing note given by him had knowledge of purpose of debtor in making conveyance, *held*, under evidence, questions for jury.

2. **Fraudulent conveyances ⬅315(1)—Setting aside of fraudulent conveyance restores only rights of parties as they existed previously.**

The setting aside of fraudulent conveyance by a debtor restores to debtor and creditor only

their respective rights as they existed before such conveyance.

**3. Fraudulent conveyances ⬅52(1)—Conveyance of homestead is not fraud on creditors, though made with intent to defraud.**

Under Rev. St. art. 3785, and Const. art. 16, § 50, creditor has no legal right to resort to debtor's homestead to satisfy his claim, and conveyance of homestead is not fraud on creditors, though made with intent to defraud them.

**4. Fraudulent conveyances ⬅19—Conveyance fraudulent in part may be sustained as to part free from fraud.**

Conveyance fraudulent in part is not necessarily void in whole, but may be sustained as to part which is free from legal fraud.

**5. Fraudulent conveyances ⬅159(4)—Bank accepting as collateral purchase-money notes received by creditor in fictitious conveyance held not to have superior lien to judgment creditor of debtor.**

Where bank with knowledge of the facts surrendered "gilt edge" stock securing debtor's note, and accepted in place of it purchase-money notes received by debtor through fictitious conveyance of his realty for purpose of delaying and defrauding creditors, *held*, rule that failing debtor might prefer one creditor over another did not apply to give bank superior lien over judgment creditor having lien on land so fictitiously conveyed.

On Motion for Rehearing.

**6. Homestead ⬅192—Pledgee of purchase-money notes covering tract including homestead held not entitled as against judgment creditor to select and assert superior lien to portion of conveyance constituting homestead.**

Where debtor for purpose of delaying and defrauding creditors made fictitious conveyance of land in excess of his homestead exemption without designating or selecting part of land which constituted homestead, and pledged purchase-money notes received to bank, which had knowledge of the facts, as collateral for loan, *held* bank as against judgment creditor of debtor was not entitled to select homestead and assert as against judgment creditor a superior lien on that portion of land conveyed.

Appeal from District Court, Red River County; Ben H. Denton, Judge.

Actions by J. P. Skidmore against L. W. Ward, defendant, and J. C. Stiles and the First National Bank of Detroit, garnishees, and by the First National Bank of Detroit against J. C. Stiles, consolidated and tried together. From judgment rendered, the First National Bank of Detroit appeals. Affirmed.

May 14, 1921, J. P. Skidmore sued L. W. Ward in the district court of Red River county, and obtained judgment against him on a promissory note. The judgment was rendered on November 2, 1921, at the regular November term of the court. Execution was regularly issued February 1, 1922, and

returned "no property found." An abstract of the judgment was duly filed for record in the county clerk's office on May 11, 1922. The appellee J. P. Skidmore then brought the present suit on August 8, 1922, against L. W. Ward and J. C. Stiles, to establish and foreclose the judgment lien against certain land in Red River county. He also sued out a writ of garnishment in the original cause against J. C. Stiles and the First National Bank of Detroit, Tex., claiming that they were indebted or had effects belonging to L. W. Ward. The garnishee, Stiles, answered that he was not indebted to L. W. Ward, nor had in his possession any effects belonging to him, but that the First National Bank of Detroit was the holder of a series of vendor's lien notes executed by him to L. W. Ward on November 30, 1920, and indorsed and delivered to it by L. W. Ward. The garnishee bank answered that L. W. Ward was indebted to it by note, and as collateral security for the indebtedness he had indorsed and delivered to it a series of vendor's lien notes executed by J. C. Stiles to L. W. Ward and dated November 30, 1920; and that the garnishee bank was holding the collateral as security for payment of the indebtedness. The bank also filed, on November 30, 1922, a suit against J. C. Stiles, seeking to foreclose a vendor's lien against the land evidenced by the notes executed by J. C. Stiles to L. W. Ward, and which land is the same land described in the petition of J. P. Skidmore. J. P. Skidmore filed a plea of intervention in the suit of the bank against J. C. Stiles, asserting a judgment lien against the land prior and superior to the lien claimed by the bank, and setting up that the conveyance of the land to J. C. Stiles by L. W. Ward was fictitious, and was made with the intention of hindering, delaying, and defrauding J. P. Skidmore in the collection of his debt, and that the bank had notice thereof when it acquired the notes, and did not acquire the notes in due course of trade for a consideration. The bank answered with demurrers and a general denial. L. W. Ward made no appearance. The two suits were consolidated by agreement and tried before a jury on special issues submitted to them. The jury made answer to the questions submitted that the deed of November 30, 1920, by L. W. Ward to J. C. Stiles, and the notes signed by J. C. Stiles and payable to L. W. Ward, were made to hinder, delay, and defraud J. P. Skidmore in the collection of his debt, and that the bank at the time it obtained the notes had notice of the intent of L. W. Ward to hinder, delay, and defraud J. P. Skidmore in the collection of his debt. In keeping with the verdict and the evidence the court entered judgment to the effect that the conveyance of the land from L. W.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Ward to J. C. Stiles and the vendor's lien by virtue of the vendor's lien notes were, as to J. P. Skidmore, null and void, and that the judgment lien of J. P. Skidmore was superior to the rights of all the other parties to the suit, and should be foreclosed as against Ward, Stiles, and the bank; that the proceeds of the sale of the land should be applied first to the payment of the debt, interest, and costs of J. P. Skidmore, with remainder, if any, on the judgment of the bank against J. C. Stiles. The judgment further allowed a recovery in favor of the bank against J. C. Stiles for the amount of the notes with foreclosure of the vendor's lien against the land, with the following provisions:

"But, in the event the sale of said lands be made, as hereinbefore decreed, at the request of J. P. Skidmore, to satisfy his debt and costs against L. W. Ward, that the purchaser at such sale at the request of J. P. Skidmore take and hold superior right and title to said land over any sale made by the sheriff or constable under this judgment, in favor of the said bank against J. C. Stiles, and such sale shall be deemed null and void as to the purchaser under order of sale issued at the instance of J. P. Skidmore upon his said judgment."

Further, the bank was given a judgment in personam on the notes against J. C. Stiles enforceable under ordinary execution.

It is shown by the evidence that L. W. Ward was indebted to J. P. Skidmore by note in the sum of $3,646.41 and interest from date, due and payable on November 1, 1920. The note was not paid at maturity, though payment was insisted upon, and J. P. Skidmore was intending to enter suit to enforce payment, and so notified Mr. Ward. At the time the note fell due L. W. Ward owed the bank between $10,000 and $11,000, and was indebted in about the sum of $11,000 on a tract of 100 acres of land in Hidalgo county that he had recently purchased, besides other small debts. He was intending to move to Hidalgo county for the purpose of residing there, and in the early part of 1921 did move there and occupied the land purchased as the homestead of himself and wife. At the time mentioned L. W. Ward had an interest in 656 acres of land in Red River county, a part of which was homestead upon which he resided. The land, it is shown, was the community property of L. W. Ward and his first wife, who was dead. There were children of the first marriage. This was all the land owned by L. W. Ward except that lately purchased in Hidalgo county. On November 30, 1920, and before his actual removal of residence to Hidalgo county, L. W. Ward and wife and the children of the first marriage executed and delivered a deed to J. C. Stiles to the 656 acres, the deed reciting a cash payment of $15,000 and the execution and delivery of five promissory notes due January 1, 1922, 1923, 1924, 1925, and 1926, respectively, after date, with 9 per cent. interest per annum from date, the first note being for $26,250, and the other four notes being for $2,867.50 each. The deed and the notes both expressly reserved a vendor's lien. The evidence is conflicting as to the value of the land, ranging from $26,250 to $16,400 and $10,000. The conveyance from Ward and others to J. C. Stiles, according to the admitted evidence, was simulated, and the execution of the notes by J. C. Stiles was entirely for the accommodation of L. W. Ward to enable him to secure a loan on his land. No part of the recited cash consideration was paid or intended to be paid. Mr. Stiles himself testified that the entire transaction was one simply to enable Mr. Ward "to get a loan," and that he signed the notes and took the conveyance purely for that purpose and merely as an accommodation to L. W. Ward, and that the deed was put in the bank, in the care of the bank, and stayed there unrecorded. J. C. Stiles at the time of the transaction knew, as he testified, that L. W. Ward "owed somewhere around $17,000 or $18,000." J. C. Stiles was not financially able to pay the consideration for the land. The vice president of the bank testified:

"I never thought J. C. Stiles to be a man of very much means; however, he has some property. He is just a man in moderate circumstances, and that is the way I considered him. This deed recites a consideration of $15,000. Mr. Stiles was not considered in and around Detroit as a man having that much cash at that time."

J. C. Stiles testified, and there is evidence to the same effect, that he, acting for L. W. Ward, made efforts "to obtain a loan" on the land in virtue of the transaction, but failed to accomplish the purpose. The indebtedness of L. W. Ward to the bank was at its inception secured by collateral security consisting of certificates of stock, worth, as the vice president of the bank testified, "something like $10,000 or $11,000, and he owed us something like $10,000 or $11,000. The collateral would just about have covered the loan. We could have cashed it probably for what the loan was at that time." On January 25, 1921, the bank, at the instance and request of L. W. Ward, charged the collateral security consisting of the certificates of stock, and substituted in place of them the notes executed by J. C. Stiles to L. W. Ward dated November 30, 1920. In that respect the evidence appears in the language of the vice president of the bank as follows:

"A change was made in the collateral for the note, and vendor's lien notes against J. C. Stiles were given in lieu of that collateral. The notes shown me are the ones. The stocks that

we had as collateral security for the $12,000 note were sent to L. W. Ward at Mercedes, and these vendor lien notes were surrendered to the bank in lieu of that stock for his debt. That stock was surrendered January 25, 1921. * * * At the time I substituted the vendor's lien notes that J. C. Stiles had executed I regarded the stock collateral that was held by the bank as gilt edge stuff, and the amount of it at its face value at that time would just about secure the loan that he owed our bank. * * * He was making arrangements to make a business venture in Hidalgo county and the Rio Grande Valley. He was under indictment in Red River county for murder shortly prior to this time. I knew what his holdings were in Red River county, and knew where his land was and how much there was of it. He had no real estate in the county, outside of this farm that I knew of, and I think he didn't have any other land. * * * After he moved to the Rio Grande Valley I sent him the collateral stock, and sent the vendor's lien notes and had him indorse them and send them back. * * * When he took down this collateral security that he had put up at the bank I sent it to him at Mercedes. I had no understanding with him that he was to use that collateral security to satisfy his other debts. He wrote me to send his stock down there and he would let the Stiles notes stay there as security until he could get a loan on them, and I mailed them to him and mailed the vendor's lien notes to indorse and send back. He never wrote me what he wanted with the stock. I have understood the First National Bank at Mercedes holds that stock now as collateral for what Mr. Ward owes them as a balance due on his land there."

In addition to these notes the bank, it appears, at the same time got as additional collateral a similar series of notes against the same land from J. P. Ward, son of L. W. Ward, executed by G. W. Boulware. These notes were for the face value of $28,500.

It appears that at the time the collateral was changed the bank knew that L. W. Ward was indebted to the appellee J. P. Skidmore. The vice president of the bank, who handled the exchange of collaterals, testified that L. W. Ward was a blood relative of his, and a stockholder in the same bank, and he was familiar with the business matters of L. W. Ward. He further testified:

"When I took these vendor's lien notes in place of the gilt edge security held I did not investigate to see whether or not the deed was on record from Ward to Stiles. I knew it ought to be on record. I did not examine the abstract before I took the vendor's lien notes as security. I knew that he (Ward) had some land for 30 or 40 years and had sold it, but I never examined the title. I don't know when I found out the deed had not been placed on record. I did not know Mr. Skidmore had brought suit against L. W. Ward and I did not know that he was going to bring it when he came to the bank and got his note against Ward. He had never talked to me about bringing suit.

I did not know anything about that deal, or about the arrangements he had with J. C. Stiles, until L. W. Ward brought those notes and left them there. Mr. Ward had told me that he was going to get some money on the land. At the time I surrendered the stock collateral I understood that Mr. Ward owed, besides the Skidmore debt and our bank debt, for an abstract, and lawyer's fees, and on his home place in Hidalgo county."

The deed from J. C. Stiles to L. W. Ward remained in the bank vault from the time of its execution until recorded. Who placed it of record is not clear, but it is shown that the bank paid the recording fee and received it from the county clerk after being recorded. It appears that the deed was offered for registration on June 3, 1921, after the citation in the present suit on appeal was served on the defendant L. W. Ward on June 1, 1921, in Hidalgo county. There are circumstances appearing in the record, offered by appellee Skidmore, bearing upon notice by the bank officials of the purpose and intent of L. W. Ward in making the conveyance to J. C. Stiles and in the execution of the notes. The circumstances, all considered, are of probative force sufficient to make an issue of fact for decision by the jury of the issues submitted to them.

Lennox & Lennox, of Clarksville, for appellant.

Dodd & Chambers, of Clarksville, and Geo. P. Blackburn, of Paris, for appellees.

LEVY, J. (after stating the facts as above). [1] The contention of appellant must be overruled, we conclude, that the conveyance from L. W. Ward to J. C. Stiles was in fraud of creditors. He placed all his interest in the land beyond the reach of ordinary process in legal action to the prejudice of the rights of existing creditors, and under circumstances, when all of them are considered, sufficient to show the object and effect to hinder and delay or defeat creditors. At least the circumstances are of sufficient probative force to make an issue of fact for decision by the jury as to the alienation of the unexempt part of the land being an act made with intention to hinder and defraud creditors. The evidence shows, too, that J. C. Stiles, the grantee, knew and participated in the object and purposes of his grantor. Further, the circumstances are sufficient to support the special finding of the jury that the bank had notice at the time it became the pledgee of the vendor's lien notes of the purpose and intent of Ward to hinder and delay the appellee Skidmore in the collection of his debt.

[2, 3] In giving effect to the jury finding that the conveyance was fraudulent, the court determined that the conveyance was an absolute nullity for all purposes as against appellee Skidmore, and allowed him

a foreclosure, as the judgment purports to do, of his prior judgment lien on all the land owned by L. W. Ward undertaken to be passed by the deed. The appellant bank claims, in effect, that this decision was error under the facts, and to the extent, at least, of the 200-acre homestead. At the time the conveyance in suit was executed, on November 30, 1920, the debt of appellee Skidmore was due, but had not been reduced to judgment. J. P. Skidmore reduced his debt to a judgment against L. W. Ward on November 2, 1922, and filed an abstract of it for record on May 11, 1922. The bank became the pledgee of the vendor's lien notes, as collateral security for its debt, on January 25, 1921. The deed from Ward to Stiles passed all of L. W. Ward's undivided half interest in the land. He had only a one-half interest in all the land. It is conclusively shown that a part of the land was occupied as a homestead by L. W. Ward and his family at the time of the conveyance, and that it had been his homestead continually for 30 years. Therefore the conveyance, as admittedly shown, included L. W. Ward's homestead of 200 acres as well as his excess over the homestead right. The general rule is well settled that, where a fraudulent conveyance is set aside in a suit by a creditor, such annulment only restores to him and to the grantor, as against each other, their respective rights as they existed before the deed was executed. Redmond v. Hayes, 116 Minn. 403, 133 N. W. 1016. The rights of neither can be enlarged by the cancellation of the deed. The fraudulent conveyance remains as between the parties thereto, and the title to the land vests in the grantee, subject only to the rights of creditors to have the grant annulled as to them. 27 C. J. p. 467; Stevens v. Cobern, 109 Tex. 574, 213 S. W. 925; and other cases. Applying the rule that the appellee Skidmore could enforce such legal rights he had as if no conveyance had been made, he had the legal right to look to all the unexempt property of L. W. Ward for satisfaction of his debt. He would have no cause of action against any other property. Manifestly he did not have the legal right to resort to the homestead, protected by law. Article 3785, Rev. Stat.; Const. art. 16, § 50. And according to the great weight of authority a conveyance of a homestead is not a fraud on creditors and furnishes them no ground for complaint, even though it is made with actual intent to defraud general creditors. 27 C. J. p. 441; 12 R. C. L. p. 505; Beard v. Blum, 64 Tex. 59; Wood v. Chambers, 20 Tex. 254, 70 Am. Dec. 382; Martel v. Somers, 26 Tex. 560; Baines v. Baker, 60 Tex. 140. For the creditor is not injured by a conveyance of property which he cannot legally subject to his debt. Since the creditor is affected only to the extent of property subject to the debt under ordinary execution, where a conveyance includes both property which is exempt as a homestead and property not so exempt, the creditor is entitled to reach the property not exempt, if the conveyance is fraudulent as to him. This, however, is the extent of his right on setting aside the conveyance, and he can recover nothing beyond the excess over the homestead right. McNair v. Moore, 64 S. C. 82, 41 S. E. 829; Thysell v. McDonald, 134 Minn. 400, 159 N. W. 958, Ann. Cas. 1917C, 1015; Kennedy v. Bank, 107 Ala. 170, 18 So. 396, 36 L. R. A. 308.

[4] A conveyance fraudulent in part, and therefore void as to that part, is not necessarily void in whole, but may be sustained as to the part which is free from legal fraud. 12 R. C. L. § 8, p. 475. The bank, a lienholder, setting up the defense that the sale of the homestead was valid between the parties and not fraudulent as to creditors, would, in the facts, be entitled to foreclose the vendor's lien against the homestead to the extent of the value of the 200 acres, and the appellee Skidmore would not have the legal right to participate in the proceeds thereof. As between L. W. Ward, J. C. Stiles, and the bank, the bank acquired a valid claim to a debt against J. C. Stiles, the maker of the notes, and a valid lien against the homestead especially. J. C. Stiles' notes, although executed for the accommodation of L. W. Ward, were, in the hands of the bank, binding obligations, at least to the extent of the debt pledged, and L. W. Ward had transferred and indorsed the notes to the bank. Skidmore v. Bank (Tex. Civ. App.) 261 S. W. 552. It is, in the facts, immaterial that the homestead exemption ceased when Ward acquired a homestead in Hidalgo county, for by the conveyance the title passed to J. C. Stiles and did not remain in Ward. Miller v. Menke, 56 Tex. 559; Inge v. Cain, 65 Tex. 81; Hargadene v. Whitfield, 71 Tex. 488, 9 S. W. 475. However, in view of the jury finding and the evidence, the bank would not be entitled to priority over the appellee Skidmore in the excess of the land above the homestead exemption. The bank's lien would be subordinate to the lien of appellee Skidmore in the excess above the homestead. The bank knew, as the jury found, of the purpose and intent of L. W. Ward to defraud appellee at the time it took the vendor's lien against all the land. The bank at the time was well secured with collateral security to pay its debt, and in exchanging and substituting the collateral acted purely for the accommodation of L. W. Ward, and not in its own interest, operating to hinder other creditors.

[5] The appellant, as grounds for priority in the excess above the homestead value, seeks to apply the doctrine that a debtor in

failing circumstances has a right to prefer one creditor over another for the purpose of securing a bona fide debt. The facts do not warrant the application of the doctrine. The facts conclusively show that the bank did not take the vendor's lien notes solely for the purpose of securing its debt, and that there was no need to make the exchange. The bank already had sufficient "gilt edge security" for its debt, and solely for the accommodation of L. W. Ward, knowing at the time of his purpose and intent, as the jury found, surrendered the "gilt edge security" and took over the vendor's lien notes in lieu thereof. The effect is that the bank was not the holder of the vendor's lien notes, to the extent of the excess above the homestead value in the land, in good faith, unaffected with an act on its part of participation in and furtherance of the purpose and intent of L. W. Ward of hindering or delaying other creditors. 12 R. C. L. § 96, p. 577.

In accordance with the conclusions reached, the judgment of the trial court is modified to the extent of establishing a judgment lien in favor of appellee Skidmore on all the undivided interest of L. W. Ward in the land only in excess above the 200 acres as a homestead, and with foreclosure of such lien in priority and full satisfaction of his debt to the debt of the bank, and adjudging a foreclosure of the vendor's lien held by the appellant bank in favor of the bank to the value of the 200 acres exempt as a homestead. As modified, the judgment is then in all things affirmed. The costs of appeal are taxed against the appellee J. P. Skidmore.

. Modified and affirmed.

### On Motion for Rehearing.

[6] In the motion for rehearing the appellee insists that he should be allowed a foreclosure on all of the land undertaken to be passed by the deed to J. C. Stiles on November 30, 1920, such conveyance being fraudulent as to creditors, as determined by the jury. Aside from the precise propositions relied on in the motion, we have reached the conclusion, upon a reconsideration of the evidence, that we erred in deciding that the judgment of the trial court should be modified so as to allow the appellant bank a foreclosure of its lien in priority of appellee's lien on a part of the land to the extent of 200 acres. The judgment should be affirmed instead of modified as previously determined.

The appellant bank proved that a part of the 656-acre tract of land was occupied as a homestead by L. W. Ward and his family at the time of the conveyance to J. C. Stiles, and that it had been his homestead continuously for 30 years. But there is no evidence as to what part of the land was occupied or used by L. W. Ward as homestead. And the facts do not show that L. W. Ward had made any statutory designation of homestead in the land, or had made selection of any defined 200 acres before the conveyance to J. C. Stiles, or that selection of such exemption was made in the conveyance to J. C. Stiles. The facts stand simply in this way: That L. W. Ward, entitled to a homestead claim, and having more land than is exempt by the law, conveyed the entire tract in fraud of his creditors, as determined by the jury, and made no claim of his exemption out of the whole, by designation, selection, or otherwise. The bank was the holder of vendor's lien notes against the whole tract, and not against certain premises selected or defined as the homestead of L. W. Ward. If the bank had the right, as a lienholder, to assert, as against a judgment lienholder, that a part of the land constituted a homestead, and that the judgment lien did not attach to the homestead, the bank has nevertheless failed to put the court in a position to separate the exempt from the nonexempt property. The burden of proof was upon the bank, in the circumstances, to prove, as a part of its affirmative defense, not only that a part of the land was exempt as a homestead at the time of the conveyance to J. C. Stiles, but what part of the land was the homestead at the time. The bank was seeking affirmative relief in that respect, that it was entitled to at least priority in certain premises to the extent of 200 acres as homestead of L. W. Ward. The appellee, a judgment creditor, was not called upon to negative homestead exemption or identify the part of the tract that was homestead. And the court, in the circumstances, cannot make the selection of a homestead out of the larger tract for L. W. Ward, in the absence of proof of some designation or selection of a particular part of the land by L. W. Ward. For the right of making designation or selection rested primarily in L. W. Ward, the head of a family. And a creditor or lienholder cannot set up the claim to a particular part of the tract as homestead except in right of a designation or selection by the homesteader, existing at the time of the conveyance. If the bank had shown that L. W. Ward had made a statutory designation, or had made a selection in the deed to J. C. Stiles, or that a particular part of the land was used and occupied as a homestead, or if the conveyance to J. C. Stiles had been only for a tract consisting of 200 acres or less, then in either event a designation or selection of the homestead by the person legally authorized to do so, and entitled to make the selection, would be apparent and proven. The bank then would be holding a lien on certain defined premises as a homestead and could assert the

claim as well as the selection of homestead in defense of its legal rights thereunder.

We do not think that reversible error is shown in the record. The judgment heretofore rendered by this court is set aside, and the judgment of the trial court is in all things affirmed.