## HENDRICKS v. MARTIN et ux.  (No. 2388.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 26, 1924. Rehearing Denied Jan. 21, 1925.)

**1. Corporations ⬤⟞⟝117 — Worthlessness of stock held not condition precedent to rescission for fraud.**

Showing that stock was worthless *held* not a condition precedent to purchaser's right to rescind for fraud.

**2. Corporations ⬤⟞⟝121 (2)—Tender of stock after retirement of jury without proof of plaintiffs' ownership thereof held insufficient.**

In suit for rescission of sale of oil stock for fraud, tender by plaintiffs, after jury had been discharged, of certificates of stock, some of which were in name of another, *held* insufficient, where it was not shown that plaintiffs were either legal or equitable owners, that certificates were transferred on books of corporation, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1168, or that signature of purported owner was genuine, but stock should have been tendered before case submitted to jury.

**3. Corporations ⬤⟞⟝121 (2)—Tender of certificates of stock, portion being in name of another and containing declaration of trust, without proof of transfer or ownership, will not justify a decree of restoration.**

In suit for rescission of sale of oil stock for fraud, plaintiff must place other party in statu quo, and burden is on plaintiff to prove that stock tendered is identical with that purchased, and hence, where plaintiff tendered certificates of stock, even if during trial, portion of it being in name of another and containing a declaration of trust, without showing that transfer could be properly made as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1168, or that plaintiff was legal and equitable owner under declaration of trust, court could not decree a restoration; articles 583, 584, and 588 not relieving plaintiff of burden of proving absolute ownership of stock.

**4. Tender ⬤⟞⟝24—When money tendered, profert in court of exact amount due necessary.**

In suit for rescission of contract of sale, when money is to be tendered, there must be a profert in curia of exact amount due, either when suit is filed or during trial, and not afterwards.

**5. Limitation of actions ⬤⟞⟝39(7)—Action for rescission of sale of stock for fraud governed by four-year statute.**

An action for rescission of sale of oil stock on ground of fraud is governed by the four-year statute of limitations. Vernon's Sayles' Ann. Civ. St. 1914, art. 5690.

**6. Equity ⬤⟞⟝87(1)—Where action within statute, defense of laches inapplicable, and statute must be pleaded.**

Where an alleged cause of action comes within any specific provision of the statute of limitations, the equitable defenses of laches and stale demand do not apply, and in such case statute governs and must be pleaded.

Appeal from District Court, Hall County; R. L. Templeton, Judge.

Action by R. E. Martin and wife against A. C. Hendricks. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Elliott & Moss, of Memphis, and Turner & Dooley, of Amarillo, for appellant.

Cole & Simpson, of Clarendon, for appellees.

HALL, C. J. Martin and wife sued the appellant to rescind a sale of certain oil stock and to recover the consideration paid by them to appellant. They allege that they paid appellant $5,000 for certain shares of stock of the Southwestern Oil & Gas Company on or about the 1st day of April, 1920; that the said Oil & Gas Company was a

joint-stock company, organized as a common-law trust association; that in order to induce the plaintiffs to purchase the stock Hendricks made fraudulent representations as to the amount which had been subscribed for stock by other purchasers, and as to the amount which the company had recently invested in oil and gas leases, and further misrepresented the facts as to the value of the property then owned by the company.· They further allege that they had executed an additional note in about the sum of $800 which represented interest that had accrued on their original note for $5,000, and which was in the hands of the said Hendricks. There is the further allegation that, after the payment of the original note for stock and the execution of the interest note, the defendant, Hendricks, had delivered to them additional stock to the amount of $500, which they supposed and believed to represent a stock dividend. The prayer is that "the said stock be canceled or redelivered to the defendant, A. C. Hendricks, which stock is herewith tendered into open court for such purpose; that they have judgment against the defendant Hendricks for $4,000 and 8 per cent. interest thereon from July 21, 1919, to the 1st day of April, 1920, and for 6 per cent. interest thereafter; that Hendricks be required to produce the $800 interest note for cancellation, and that the same be canceled." The defendant, Hendricks, answered by general demurrer ·and special exceptions, general denial, a plea of accord and satisfaction, and further alleged that at the time of the settlement of the first note by the payment by plaintiff of $4,000 and the release by defendant of $1,-000 thereon, and the execution of an interest note; that the plaintiff knew all the facts set out in his petition as constituting fraud; that they decided to hold the stock for speculation until a decline in the oil stock market; that they continued to hold it until the collapse came whereby values of oil property became, in a sense, worthless, etc., and, when he found himself unable to sell the stock, began to complain in the manner set out in his petition; that he knew· all the facts which he alleges were misrepresented to him for more than two years prior to the ·filing of the petition, wherefore his action is barred by the statute of limitation. He declared upon the interest note, and prayed for judgment for the amount thereof. The case was submitted to the jury upon numerous issues, all of which were answered favorably to the plaintiffs, the appellees herein, and will be referred to only as it becomes necessary in the discussion of the propositions presented. Judgment was entered that the plaintiff recover $4,000, with interest from the date of payment; that the interest note be canceled, and defendant was denied a recovery by the court upon the interest note. It is further stated in the judgment

that after the verdict was returned on March 14, 1924, that the plaintiffs on March 20th prepared and filed their motion for judgment, and the court decreed that Martin do have and recover of Hendricks provided "plaintiffs' tender into this court before the entry of this judgment said $6,500 par value of stock issued by the Southwestern Oil & Gas Company for delivery to the defendant A. C. Hendricks on this the 20th day of March, 1924, before the entry of this judgment in this cause and before the action of this court on the defendant's motion for a new trial." The judgment further recites that Martin and wife "have tendered on this date before the entry of the judgment stock certificates No. 127 to 139, both inclusive," "certificates No. 129 to 132 showing to have been issued to B. D. Carroll, and bearing the name of B. D. Carroll as indorser written thereon, the remaining shares having been issued and delivered to R. A. Martin"; "said stock is directed to be and is hereby delivered to the clerk of the court to be held by him subject to the call of defendant, Hendricks."

The appellee insists that the propositions urged are not referable to the assignments referred to under the propositions. It appears that in preparing the motion for new trial counsel prefaced the several errors urged, with this statement:

"Because the court erred in failing and refusing to grant defendant's motion for an instructed verdict in favor of defendant, etc."

Inspection of the assignments themselves shows, however, that the remainder of the several assignments as copied from the motion for new trial specifically call to the court's attention the identical errors complained of by the first two propositions.

It is insisted under the first proposition that it was the duty of the plaintiffs, seeking to· rescind a sale of stock, to make offer of restitution of such property and to produce the certificates of stock upon the trial of the cause, and that such an offer made for the first time, after the verdict had been rendered and the jury discharged, comes too late. Under the second proposition it is insisted that, because the certificates of stock included four for ten shares each of the aggregate par value of $1,000 standing in the name of B. D. Carroll, and because no proof was offered to show that plaintiffs had acquired title thereto, or had any authority or right to make disposition of the same, the tender of restitution was insufficient for want of capacity on their part to fully restore the property to the defendant.

[1] The bill of exceptions upon which these contentions are based shows that no tender of the certificates of stock was made, aside from the pleading above quoted, until the day after the verdict was returned and the jury

discharged; that on that day Martin's counsel brought four certificates of stock for $250 each to the trial judge, and, without the knowledge of defendant or his counsel, submitted the same to the court's order and disposition; that the court announced he would take the matter under advisement until the hearing of plaintiff's motion for judgment; that the motion was heard five days later, when, for the first time, in the presence of defendant and his counsel, plaintiff proffered certain certificates of stock of the Southwestern Oil & Gas Company of the total par value of $6,500, among them being the four certificates mentioned above for ten shares each. The certificates recite that they are owned by B. D. Carroll, and are transferable only on the books of the company, only by the owners thereof in person or by duly authorized attorney, and that the certificates are held subject to the declaration of trust. On the back of each of the four last mentioned certificates was a printed form of assignment, the blank had not been filled out nor dated, but the name of B. D. Carroll was signed thereto. The bill of exceptions further shows that Martin and wife did not at that time, nor any other time, prove or offer to prove that the name signed to the transfer was the genuine signature of B. D. Carroll, or that plaintiffs had acquired title to the certificates from Carroll and were the owners thereof with power of disposition; that no other evidence was offered at that time with reference to the status or ownership of the certificates. The defendant objected to the tender upon the ground that it came too late, and because plaintiffs did not support the tender by showing the authority of plaintiffs to dispose of said certificates standing in the name of Carroll, and that plaintiffs did not show legal ability to make valid restitution co-extensive with the purported tender. These objections were overruled. The testimony of the plaintiffs was, according to their allegations, with the exception that Martin himself testified first, to the purchase of $5,000 in stock on or about July 21, 1919, and later disclosed that in January, 1921, they had received additional stock of the par value of $1,500, being $1,000 more stock than the petition mentions. It further appears that they gave the defendant a note for $5,000 for the stock originally, and that they had paid $1,000 in February, 1920, and $3,000 in January, 1921, and that the remaining $1,000 due on the note was remitted by the defendant. There is no testimony tending to show that the stock was worthless. This was not a condition precedent to plaintiff's right to rescind. Edmonds v. White (Tex. Civ. App.) 247 S. W. 585.

All interest of Mrs. Martin was disposed of by the judgment.

[2, 3] In recognition of the rule that a purchaser seeking to rescind a sale must restore, or in good faith proffer a restoration of, all the property which he acquired under the contract (Continental Trust Co. v. Cowart [Tex. Civ. App.] 173 S. W. 588), plaintiffs delivered—but to the court after the jury had been discharged—certain certificates of stock which they say were received from the defendant, with the request that they be held for the defendant's acceptance. The burden rested upon them to show that such certificates were the identical ones which they had purchased, or that they were both the legal and equitable owners thereof as against the corporation. No question is made as to the identity of the certificates, except as to the four certificates issued to Carroll, but as to them these questions arise: Were they the certificates purchased by plaintiffs from defendant? And were plaintiffs the legal and equitable owners thereof as against the corporation? Prima facie, Carroll was the owner of them, since his name appeared on the face of the certificates as the original owner. Upon the face of the certificates it is stipulated that they were "transferable only on the books of the company by the owners thereof in person, or by duly authorized attorney upon the surrender of their certificates properly indorsed." It is further stipulated therein:

"This certificate is held subject to an agreement and declaration of trust dated June 4, 1919, a duplicate original of which is on file with the secretary, but which is hereby referred to and made a part of this certificate."

V. S. C. S. § 1168, provides:

"The stock of any corporation created under this title shall be deemed personal estate, and shall be transferable only on the books of the corporation in such manner as the by-laws may prescribe."

While this article applies to corporations, we think such a provision in a declaration of trust, and set out in the face of certificates issued by an unincorporated association and made a part of the contract between those who become members of such an association, is binding upon every stockholder. No proof was ever offered to show that these four certificates had been paid for by Carroll; that his purported signature to the transfer was genuine; and that the plaintiffs were the legal as well as the equitable owners thereof against the association. We think the certificates should have been brought into court during the trial, and before the case was submitted to the jury, in order that the court or jury and the defendant might have the opportunity of inquiring and knowing that the tender in the pleadings was made in good faith, and that the very stock tendered was proffered for restoration. The action of the trial judge in accepting the stock for the defendant assumed the proof of these essen-

tial facts and determined for the jury and the defendant issues beyond his prerogative.

In Seeligson v. Brown, 61 Tex. 114, the Supreme Court held that Brown, as the holder of certificates of stock issued to Hobby, was the owner thereof as against an attaching creditor of Hobby. As in this case, Hobby, to whom the stock had been originally issued, had signed his name to the blank transfer on the back of the certificates, but it seems in that case it was proved aliunde the signature that Hobby himself had delivered the identical certificates to Brown with his name signed to the blank transfer. As stated, no such proof was offered in the instant case. In attempting to restore the property purchased, Martin must make all proof necessary to place Hendricks in statu quo. The rule that one seeking the rescission of a contract upon the ground of fraud must place the opposite party in statu quo before the relief prayed for will be granted is conceded by both parties, and is too well grounded to require further discussion here. Stewart v. Railway Co., 62 Tex. 246; Chambers v. Grisham (Tex. Civ. App.) 157 S. W. 1177; Corbett v. McGregor, 62 Tex. Civ. App. 354, 131 S. W. 422. The reasonable inference from the record before us is that Hendricks sold and delivered to plaintiffs stock of which he was the legal and equitable owner, and not stock which prima facie belonged to Carroll. It follows that a proffer of stock which, upon its face is the property of Carroll, is not a compliance with the requirement of the rule just stated. The rights of the parties in a case of this character are not governed by the rules relating to the transfer of stock certificates announced in the Seeligson Case, supra, and in Adams v. Texhoma O. & R. Co. (Tex. Civ. App.) 262 S. W. 139. While in Condit v. Galveston City Co. (Tex. Civ. App.) 186 S. W. 395, and that line of cases, it has been held that shares of stock may be sold by parole, and the equitable title thereto may pass by the delivery of the stock certificate itself; it was also held that the fact of the sale and the actual transfer of title thereto must be established by proof aliunde the certificate and its recitals; and the court concluded in the Condit Case that such facts could be shown by recitals in ancient instruments where the original owner and transferee of the certificates were both dead. The rule does not apply here, since it was not shown that Carroll was dead at the time of the trial. Moreover, the rule in the Seeligson and Adams Cases, governing as between the stockholder and his creditors, or creditors of the corporation, have no application in suits for rescission, for the reason that in this case the defendant Hendricks was entitled upon rescission to have either the very same stock which he had sold or, at least, stock of the same class, the mere possession of which would constitute him as against

the company not only the equitable but also the legal owner thereof. The court could not require him to accept stock which might not be transferable on the company's books or the legal title to which must be established by a suit against the company before his ownership would be absolute. Vesting only the equitable title in him would not be a restoration of his status quo.

It is held in Walker-Caldwell Producing Co. v. Menefee et al. (Tex. Civ. App.) 240 S. W. 1023, that the provision that articles 1168, 1169, V. S. C. S., that stock shall be transferable on the books in such manner as the by-laws prescribe is mandatory, and that such provision on the face of a certificate of stock relating to the transfer thereof is a qualification against free and open sale and transfer so as to pass the legal title; or, in other words, without a regular transfer on the books, the transferee does not acquire a legal title to the shares represented by the certificate, and at most acquires only an equitable assignment, subject to the corporation's rights under the law and such indorsement to refuse to recognize the certificate's validity, if for any reason the issuance of the certificates is not binding upon the corporation. It is further held in that case, in accordance with the general rule in this state, that shares of stock are but symbols of property and are not negotiable instruments, and that the transferee of the certificates has no greater right than the original holder in fact would have to the shares represented by the certificates. The conclusion reached in that case, after an extended discussion of the authorities, is that certificates of stock are nonnegotiable in the sense that a complete transfer of title, good as against the corporation, can only be made when the transfer thereof is made in accordance with a governing statute, and that the transferee is not an innocent purchaser in the same sense that the holder of a negotiable instrument would be. Applying the principles there announced to the instant case, it follows that, even though the certificates had been produced during the trial, and Carroll had testified that he was the owner of the stock, and had the legal right to transfer the certificates to Martin, still the court could not decree restoration thereof to Hendricks until it was shown that the transfer could be made properly upon the books of the company, and that Martin was the legal as well as the equitable owner under all the provisions of the declaration of trust. The requirements of the rule are not met by restoring a part of the certificates— there must be a rescission in toto, and restoration must be full and complete. Ann. Cas. 1912A, 660, note.

[4] The general rule is announced in Texas that in suits for rescission of contracts of sale that when money is to be tendered there must be a profert in curia of the exact

amount due either when the suit is filed or during the trial, and not afterwards. Rogers v. People's Bldg. L. & S. Ass'n (Tex. Civ. App.) 55 S. W. 383; Brock v. Jones' Ex'r, 16 Tex. 461; Tooke v. Bonds, 29 Tex. 420. See, also, State v. Hoffman, 109 Tex. 133, 201 S. W. 653. Reasons for a more strict application of this rule exist when the tender is of bonds, securities, choses in action, and other personal property of small bulk, such as certificates of stock, jewelry, etc. In such cases the very thing to be restored should be before the court and jury during the trial in order that the opposite party may have the opportunity of determining whether it is the identical property sold. Pell v. Chandos (Tex. Civ. App.) 27 S. W. 48; Weil v. Lippman, 55 Misc. Rep. 443, 105 N. Y. S. 516; Hunt on Tender, § 515. This case is a forceful illustration of the wisdom of that rule, because Carroll, not being a party to the suit, would not be precluded by the judgment rendered herein from claiming his property against the company, even in the hands of Hendricks, if in fact, Martin was not the legal as well as the equitable owner thereof. This court held, in U. S. Fid. & Guaranty Co. v. Ramey (Tex. Civ. App.) 261 S. W. 503, that the company would not be protected where it issued to a transferee of the original certificate a new certificate in lieu of the original, without verification of the genuineness of the signature of the original owner which appeared signed to a blank assignment on the back of the original.

The provisions of V. S. C. S. arts. 583, 584, 588, do not relieve plaintiffs of the burden of making the necessary proof of absolute ownership of the four certificates in question, because their suit is not based upon the certificates of stock, and no assignment by Carroll of the stock to them was alleged. In the absence of an allegation that Carroll had assigned them the stock, Hendricks was not required to deny the assignment under oath. The condition of the stock as to ownership was not apparent until after the trial; therefore these articles do not apply.

It may be conceded that the court, sitting as a chancellor in the exercise of the extraordinary powers vested in a court of equity, could, by his decree, adjust and settle the equities between the parties, and, where the suit is for the rescission of a contract for the sale of land, the judgment itself may divest one party of title and vest it in the other without the actual tender in curia of a deed, and this is the rule where a sum paid may be deducted from a total amount to be recovered upon final trial of a case instituted to cancel a release. In such cases a reconveyance of the land or a tender of the amount in curia which has been received is not required before final judgment. I. & G. N. Ry. Co. v. Shuford, 36 Tex. Civ. App. 251, 81 S. W.

1189; Maddox v. Clark (Tex. Civ. App.) 163 S. W. 309; Id., 107 Tex. 212, 175 S. W. 1053; Wisdom v. Peek (Tex. Civ. App.) 220 S. W. 210; State v. Snyder, 66 Tex. 687, 18 S. W. 108; De Perez v. De Everitt, 73 Tex. 431, 11 S. W. 388. For obvious reasons, however, the rule should not be adopted in suits for cancellation and rescission of contracts for the sale of choses in action where the identical property is to be restored, and where the subject-matter of the suit is evidenced by written symbols which may pass by delivery.

[5, 6] A full discussion of the third proposition would involve an expression by this court of an opinion upon the weight and sufficiency of the evidence which would be an invasion of the province of the jury upon another trial. We will therefore not consider that proposition further than to say that we think the statute of limitations of four years, being V. S. C. S. art. 5690, applies. The rule is that, where an alleged cause of action, either legal or equitable, comes within any specific provision of the statute of limitations, then the equitable defenses of laches, and stale demand do not apply. In such cases the statute of limitations will govern and must be pleaded. Chamberlain v. Boon, 74 Tex. 659, 12 S. W. 727; Clark v. Texas Co-op. Inv. Co. (Tex. Com. App.) 231 S. W. 381; Id. (Tex. Civ. App.) 235 S. W. 973; Blount v. Blecker, 13 Tex. Civ. App. 227, 35 S. W. 863; Thomason v. McIntyre, 113 Tex. 220, 254 S. W. 315; O'Loughlin v. Moran (Tex. Civ. App.) 250 S. W. 774; New York & Tex. Land Co. v. Hyland, 8 Tex. Civ. App. 601, 28 S. W. 206, 212; Lone Star Life Ins. Co. v. Pierce (Tex. Civ. App.) 200 S. W. 1104. For a general discussion of this point with numerous authorities see 21 C. J. pp. 251–256.

The judgment is reversed and the cause remanded.