### CONRADS et al. v. KASCH.
No. 7318.

Court of Civil Appeals of Texas. Austin.
Feb. 19, 1930.

Appellee's Motion Overruled March 26, 1930.
Appellant's Motion Overruled April 9, 1930.

T. C. Johnson, Jr., and Will G. Barber, both of San Marcos, for appellants.

R. E. McKie, of San Marcos, and Cunningham, Moursund & Johnson, of San Antonio, for appellee.

BAUGH, J.

In 1921 H. Conrads and Ed. Kasch were, and for several years prior thereto had been, engaged as partners in breeding, growing, and selling high-grade planting cotton seed. In June, 1921 a corporation was formed known as the "Kasch Pedigreed Seed Farms," with offices at San Marcos, Tex., and with a capital stock of $30,000, divided into 15,000 shares of $2 each. Of this stock Kasch subscribed 4,243 shares and Conrads for 4,242 shares. The remainder was subscribed in small amounts by some 55 or 56 farmers throughout that territory. This corporation acquired the seed business of Kasch and Conrads. Kasch was president, a director, and general business manager of the corporation from its formation until its dissolution in June, 1924. At' the stockholders' meeting on November 5, 1923, at which 13,310 shares were represented, dissolution was agreed upon, and an agreement was made between Kasch and the stockholders then present whereby Kasch was to continue the business of the corporation as theretofore to the end of that fiscal year, i. e., May 31, 1924, and at that time was to purchase all its assets on a basis of cost, less a reasonable depreciation. Certificate of final dissolution was sent to the secretary of state on June 4, 1924.

Conrads filed suit against Kasch on May 29, 1926, alleging, among other things, that in effecting the dissolution of said corporation and in his agreement made with the stockholders in November, 1923, the said Kasch, being in complete control of said corporation, the only one cognizant of all its assets and in charge of all its business and books, occupied a fiduciary relationship to the other stockholders, and became in effect a trustee for the corporation and for its stockholders in liquidating its business preparatory to final dissolution; that in that capacity he was guilty of various breaches of his trust, alleging that he withheld information from said Conrads and the other stockholders as to what constituted the assets of said corporation, the value of same, etc.; that he acted in bad faith; and that he obtained title to and possession of the assets at a wholly inadequate price, and prayed for an accounting by Kasch, judgment for specified amounts, and for the value of all properties acquired at less than their fair value.

In response to a plea in abatement by Kasch, all stockholders of the corporation were made parties. Some 35 of the other stockholders thereupon, in February, 1927, joined Conrads by cross-action against Kasch in this suit. The remaining stockholders declined to join either of said original parties, and the case, finally tried to a jury in March, 1928, was submitted on 35 special issues, and upon their answers thereto the trial court rendered judgment in favor of Kasch; hence this appeal.

Kasch had complete control of .the conduct of the office and the sales of the seed to the public. He was paid a salary by the corporation for his services. All the other directors and stockholders were farmers, none of whom resided in San Marcos. In general the business was conducted as follows: Breeding seed were grown by Kasch and Conrads on their 1,200-acre farm near San Marcos. These were sold to the corporation, which in turn furnished them to numerous farmers known as contract growers, and most of whom were stockholders, under agreements that these growers either pay the corporation for such seed or return to it that year bushel for bushel from the crop grown therefrom. These growers contracted to sell to the corporation all the seed grown from those furnished by the corporation. These seed in turn were sold to the public generally for planting seed. At the close of the ginning season, the corporation could readily ascertain how much seed it had for delivery, and also how many orders it then had on hand for those seed. When it became apparent that the seed supply for any year was sold out, agents were usually so informed, and only orders for seed to be grown the next year were then accepted, and these subject to cancellation by the corporation in case same could not be filled by it because of circumstances beyond its control.

Appellants' first contention is that the relationship of Kasch to the corporation and to all its stockholders, especially under the facts of this case, and in liquidating its business, being that of a trustee, it was his duty, in dealing with them for his own benefit, to make full and fair disclosure of all facts affecting their entire dealings; and that, when called in question, the burden rested upon him to show the fairness of such sale to him, and that no advantage of the corporation was taken by him in any way.

Under the particular circumstances of this case, we think the appellants are correct. This is true even if it be conceded that Kasch, in the meeting of November 5, 1923, was dealing with the stockholders as such, and

---

not with the corporation acting through its directors. He undoubtedly was bargaining for himself and in his own interest in acquiring the assets of the corporation. All of the appellants were farmers, most of whom knew little or nothing about the business or the assets of the corporation. Kasch was president, general manager, in control of the business and books of the corporation, an astute business man, and intrusted by stockholders and directors with all but complete control of all its affairs. Many of the stockholders did not know beforehand the purpose of the stockholders' meeting of November 5, 1923. At that meeting, with dissension between Kasch and Conrads, who owned the majority of the stock, and with the power in Kasch to take away from the corporation the right to use his trade-mark and trade-name under which all the planting seed were sold, the other stockholders had practically no alternative but to agree to a dissolution. Kasch was also intrusted with winding up the affairs of the corporation after November 5, 1923, preparatory to dissolution and preparatory to his taking over all its remaining assets, which were under his control and their value actually fixed by him. Undoubtedly, we think he became a trustee for the corporation and for the other stockholders. See Tenison v. Patton, 95 Tex. 284, 67 S. W. 92, 95; 14a C. J. 97, 112. As such it was his duty not only to make full and fair disclosure of all material facts as to assets, values, etc., but to pay a fair and adequate price for all such assets acquired by him; and it was his affirmative duty to show as much when his dealings were called in question.

The next question raised is sufficiency of the evidence to support certain findings of the jury. The jury found substantially as follows: (1) That the agreement of November 5, 1923, included in the assets of the corporation to be purchased by Kasch all seed stock; (2) that Kasch substantially complied with said agreement; (3) that at the meeting on November 5, 1923, the stockholders knew what was included in the assets Kasch proposed to take over, but did not know their value; (4) that said agreement was fair and beneficial to the stockholders; (5) that the price paid by Kasch and the things he agreed to do were a full and adequate consideration for all corporate assets; (6) that the directors of the corporation on June 9, 1924, after dissolution of the corporation, approved the statement presented to them by Kasch showing in what manner he had complied with his agreement of November 5, 1923; (7) that at that time said directors had full knowledge as to the nature, quality, amount, and fair value of the assets so taken over by Kasch; (8) that the price paid therefor by Kasch was their fair and reasonable value; (9) that the orders for planting seed then on hand taken over by Kasch and used by him the following season were worth nothing; (10) that the planting seed so taken over by Kasch upon such dissolution were worth only what Kasch paid for them, viz. about $65 per ton; (11) that appellants knew on or prior to February 15, 1925, or should have known in exercise of reasonable diligence, of the failure of Kasch to account to the stockholders for any assets taken over by him, and what was a fair value therefor; (12) that what was known as the Aldridge contract, being a seed growing contract made on October 30, 1922, by Kasch individually, though negotiated at the expense of the corporation, was the individual property of Kasch; (13) that from that contract during 1923 Kasch realized benefits of approximately $11,000; (14) that Kasch and B. A. Stuffleheme (sales manager for the corporation) received a commission of $450 for sale of the corporation's seed to Aldridge; (15) that the delay of all appellants in filing their suits against Kasch was under the circumstances an unreasonable delay.

The evidence shows that as early as August, 1923, the corporation already had orders for all the planting seed it would receive that fall from its contract growers; and the sales agents in the field were instructed by Kasch in August, 1923, not to accept orders except those to be filled out of the 1924 crop. This information, however, was not conveyed to the stockholders at the November 5th meeting. Kasch testified that he did advise the stockholders at that time that the 1923 crop was sold out. But he said nothing either to the stockholders at the November, 1923, meeting or to the directors on June 9, 1924, about the amount of orders on hand, secured by and at the expense of the corporation, to be filled out of the 1924 crop. Orders were obtained at the Dallas Fair in October, 1923, and at the Cotton Palace at Waco immediately following it, aggregating over $160,000 worth of planting seed, and orders kept coming in on up to June 1, 1924. Kasch used many of these orders profitably in continuing personally the seed selling business after said dissolution. Kasch admitted that on November 1, 1923, he could have arrived at a fairly accurate determination from the books in his possession of what would be the net profits of corporation's business for that fiscal year, and also the fair value of its assets. But he did not furnish such information to the stockholders on November 5, 1923, or thereafter. On the other hand, he stated to them then that, upon final liquidation of the corporation's business, under the agreement he proposed to make with them, he thought they would realize from 85 per cent. to 95 per cent. of their capital investment. Yet books showed on January 1, 1924, a net operating profit of approximately 100 per cent.

It also appears that, when the corporation was formed, there were no orders on hand for seed, and that the physical assets trans-

ferred by Kasch and Conrads to the corporation were valued at $6,140. The remaining $23,800 was for the going business, and was carried on the books as the value of the "good will" of such business. In the meeting of November, 1923, and of the directors in June, 1924, Kasch at no time mentioned any such item, nor considered its value, and gave to the stockholders, who were farmers, and doubtless knew little, if anything, of such matters, no information whatever as to any such asset. Yet the business of the corporation had grown by leaps and bounds, paying that year approximately 100 per cent. dividend, and had on hand, when dissolved, orders for many thousands of bushels of planting seed. Kasch testified that he canceled orders for between 20,000 and 30,000 bushels of seed out of the 1924 crop which he could not fill, and which had been secured by and at the expense of the corporation.

It is not controverted that there was on hand 923½ bushels of seed on June 4, 1924, and that there was due the corporation from contract growers 7,404 bushels of seed which were to be delivered to it in the fall of 1924, and that there were also abundant orders then on hand to dispose of all such seed at about $3 per bushel. Yet Kasch took over all these orders without notice to the stockholders and without compensation to the corporation, and all the seed except 275 bushels at approximately $1 per bushel, and used them to fill those orders. But the jury found that the orders were worth nothing, and that he paid full value for the seed. As against Kasch's testimony, which was not at all satisfactory on these matters, more than thirty of the stockholders who knew practically nothing about the assets of the corporation nor the conduct of the business, except what Kasch told them, testified that nothing was said at the November meeting about seed being included in what Kasch proposed to purchase, and that, had they known that such seed and the thousands of orders were to be included, they would not have agreed to the terms proposed by Kasch. Many of them testified that they did not learn of such facts until shortly before they joined Conrads in his suit against Kasch, and some testified that they did not have any such information until shortly before the time of the trial in 1928.

▇▇▇▇ Not only does the evidence wholly fail to support the finding of the jury that Kasch made full and fair disclosure of all material facts to the stockholders, but it does not support the finding that the appellants knew or should have discovered his failure to do so more than two years before filing their cross-actions against him. Conrads filed his original suit in less than two years after the final dissolution. As stated, the other impleaded stockholders were farmers, each hold-

ing a small amount of stock, who knew little or nothing about the assets of the corporation or what the books showed, but intrusted that entire matter to Kasch. The record affirmatively shows that no annual statements showing the condition of the corporation were ever made by Kasch to the stockholders; and that, in spite of some requests from stockholders for such information, none were ever made. All records, contracts, books, etc., of the corporation were in Kasch's hands and it appears that within about a year after dissolution all such books, records, etc., were lost or destroyed, except orders for seed taken in 1923 –24, and such records as related to Kasch's individual dealings with the corporation. Practically the only source from which they could have procured such information was from Kasch or from records under his control. He admits that he did not furnish them some of the material information, which it was his affirmative duty to furnish. The stockholders had a right to rely upon him to deal fairly with them, and with the corporation and to make full disclosure of all such matters. Many of them had no occasion to look into the matter until they were made parties to this suit. And it is, we think, immaterial as to what this suit may be designated; it is in effect an action sounding in fraud; and neither limitation nor laches began to run until such fraud was discovered or should, in the exercise of ordinary care, have been discovered. For, as stated by Judge Williams, in Tenison v. Patton, supra, "such a transaction is always to be subjected to the closest examination, and a contract between those so situated which is prejudicial to the corporation should be held to be a fraud upon it. * * *"

In view of another trial, we refrain from further discussing the evidence than to say that it was sufficient to sustain the findings of the jury on many of the issues submitted to them.

▇▇▇▇ There was no error in charging the jury that Kasch owned individually the trade-mark and trade-name under which the seed were sold by the corporation. We think the evidence conclusively shows that, and that the corporation used same in conducting its business only as licensee. And in this connection we find that there was no error in excluding testimony proffered by appellants to the effect that representations were made to prospective stockholders, either by Kasch or with his approval, prior to incorporation, that the corporation when organized would become the owner of his trade-mark. No fraud is alleged in the sale of such stock, and no attempt was made to cancel subscriptions on any such grounds. Such representations would not bind the corporation after it was formed, unless adopted by it or acted upon by it. 14 C. J. 264. Nor would they be any evidence of

title in the corporation to the property in question, in view of the fact that in the bill of sale to the corporation of the business of Kasch and Conrads the trade-mark and trade-name were expressly reserved as the personal property of Kasch.

The jury found that the Aldridge contract, which Kasch claimed to own individually, was procured at the expense of the corporation; and that Kasch and Stuffleheme divided a commission of $450 for seed sold to Aldridge belonging to the corporation. Kasch denied both. Neither of these was a proper charge against the corporation, but both inured to Kasch's benefit; and it is patent that he did not advise either the stockholders in November, 1923, nor the directors in June, 1924, of items he positively denied at the trial. Nor can we assume that the books showed any such charges. Yet the jury found that he made full and fair disclosure to the appellants. There are other contradictory or confusing findings, but, in view of a reversal on the grounds discussed, we shall not undertake to set them out here.

The issues of limitation and laches remain. Appellants insist that, since Kasch claims title to all property taken over by him under the agreement made with the stockholders on November 5, 1923, and the approval of the distribution by him, or payment therefor, by the directors on June 9, 1924, it was necessary for appellants to set same aside before they could recover, and that therefore this action is in the nature of an action for rescission and cancellation, and that the four-year statute of limitation applies. With this we cannot agree. It is well settled that the four-year statute does apply to a suit for rescission on the grounds of fraud. But an action for damages for fraud and deceit is governed by the two-year statute of limitation. Gordon v. Rhodes, 102 Tex. 300, 116 S. W. 40; Tex. Co-Op. Inv. Co. v. Clark (Tex. Civ. App.) 212 S. W. 246; Id. (Tex. Com. App.) 231 S. W. 381; Hendricks v. Martin (Tex. Civ. App.) 267 S. W. 1047. The cause of action asserted against Kasch was, we think, neither one for rescission, as urged by appellants, nor one solely for conversion, as insisted by Kasch, but rather one amounting to a charge of fraudulent dealings by him with the corporation and with the stockholders. As such, the statute of limitation of two years would apply. Kasch continued the business of the corporation until its dissolution on June 4, 1924, and in no event would limitation begin to run until his agreement was finally consummated by his taking over the property on June 1, 1924. Conrads filed his original petition on May 29, 1926, within two years thereafter, and, as to the grounds therein alleged, limitation did not run. We think, however, that as to the Aldridge contract, which was not attacked until his amended pleading filed February 12, 1927, which contract was dated October 30, 1922,

and about which Conrads doubtless knew when he signed the agreement for the corporation with Kasch on January 5, 1923, authorizing such contract, was clearly barred as to Conrads by both the two and four-year statutes of limitation. The same is also true as to his suit to rescind the bill of sale made by Kasch and Conrads to the corporation dated September 13, 1922, and as to the contract between Kasch and the corporation, dated September 14, 1922, with reference to the Kasch trade-mark. These pleadings attacking said instruments specifically were not filed until January, 1928, yet Conrads was a party to both instruments and familiar with all facts surrounding their execution. Clearly a plea of limitation of even four years was good as to them.

The appellants other than Conrads did not file their cross-action against Kasch until February 15, 1927, more than two years after dissolution. The jury found that they should have known prior to February 15, 1925, that Kasch had not accounted to the stockholders for the full value of the assets taken over by him. This finding followed a finding that he had so accounted, and creates, if not a conflict, at least uncertainty as to what is meant by it. As heretofore stated, these stockholders were farmers who had nothing to do with the operation of the business, intrusted the management and control entirely to Kasch, and, as some of them testified, doubtless would not have known what the books showed if they had examined them carefully. We will not attempt to discuss the voluminous testimony bearing upon this issue. Suffice it to say that we are of the opinion that, in view of the relationship of Kasch to these parties, their inability and lack of opportunity to discover what he had done, the finding of the jury above referred to which would bar their cause of action is not supported by the evidence, and we cannot sustain it.

The next issue presented is the finding of the jury that plaintiffs in cross-action were guilty of unreasonable delay in not filing their suit prior to February 15, 1927, under the facts and circumstances of this case; and that same was true of Conrads in not filing his original suit prior to May 29, 1926.

The decisions are not harmonious as to whether laches can be urged as an equitable defense in any case coming within a specific provision of a statute of limitation. In Hendricks v. Martin, 267 S. W. 1051, the Amarillo Court of Civil Appeals, citing numerous cases in support thereof, expressly held that in such cases such defense does not apply. The general rule seems to be, however, that, where there has been an inexcusable delay, and special circumstances exist which would make it inequitable to enforce a right asserted, the defense of laches is available; and that same is not determinable entirely by the period of limitation fixed by stat-

738

ute. But, where the statutory limitation period has not elapsed, it is incumbent upon the defendant both to plead and prove extraordinary circumstances which would work a grave injustice upon him to render such a defense available. See 21 C. J. 256; Eldridge v. Eldridge (Tex. Civ. App.) 259 S. W. 215; Minchew v. Morris (Tex. Civ. App.) 241 S. W. 219; Winters v. Coward (Tex. Civ. App.) 174 S. W. 941. We do not think Kasch met that burden as against his own conduct in handling the affairs of the corporation and in dealing with the stockholders. The only circumstance which in our opinion would work any hardship upon him was the loss or destruction of the books of the corporation which occurred about a year after the dissolution of the corporation and for which he was himself responsible. Certainly a premature loss or destruction of such valuable records by him should not militate against the appellants' rights to recover against him for his own misconduct.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for another trial.

Reversed and remanded.

#### On Motion for Rehearing.

In his motion for rehearing, appellee insists that we have placed the burden upon him to show the amount, if any he has damaged appellants. Such is not the import of our opinion. Because of his fiduciary relationship to the appellants, it was Kasch's affirmative duty, as stated. to make full disclosures of material facts to the stockholders, whose property he was bargaining for; and, in addition, to pay therefor an adequate price. If failure to make full disclosure of material facts induced the stockholders to agree to a dissolution which they would not otherwise have agreed to, such conduct would constitute in effect, as stated by Judge Williams in Tenison v. Patton, supra, a fraud upon the corporation, irrespective of the adequacy of the price he paid for the assets after dissolution. If, on the other hand, he did make full disclosure of the material facts prior to the agreement to dissolve the corporation, but thereafter took advantage of the trust reposed in him in taking over and evaluating its assets, and paid an inadequate price therefor, he would still be guilty of the same charge. In either

case he must affirmatively show fair dealing with the corporation and with the stockholders. His failure to do so would make a prima facie case of constructive fraud against him, entitling the appellants to damages. The general burden of proof as to the amount of such damages appellants could recover would continue to rest upon them throughout the case. Their right to recover after showing the fiduciary relationship of Kasch to them and to the corporation would be prima facie established in the one instance under a burden of evidence resting upon Kasch. The amount of such recovery would still be under the general burden of proof resting upon the appellants.

The judgment of the trial court being that appellants take nothing against appellee, and all the elements of damage being so closely related to the main issue in the case, that is, that of a constructive fraud charged against Kasch, we deem it improper to undertake to separate and affirm the case as to questions submitted to the jury relating to particular assets taken over by Kasch.

We are also of the opinion that as to the Aldridge contract, dated October 30, 1922, the bill of sale from Kasch and Conrads to the corporation, dated September 13, 1922, and the contract between Kasch and the corporation, dated September 14, 1922, the defenses of limitation as to all appellants were established as a matter of law; that is, any right of appellants to rescind such contracts or to damages flowing from the contracts themselves. These items should therefore be eliminated upon another trial.

But limitation would not as a matter of law apply to the items of the expense to the corporation of procuring the Aldridge contract, nor to the division between Kasch and Stuffleheme of the commissions on the seed sold to Aldridge. Kasch denied both of these items, and it may therefore be assumed that the books did not show them. If such items were paid improperly by the corporation, and that matter concealed from its directors, these facts would be admissible on the issues of fair dealing and full disclosure; and limitation would not run against their recovery until same were discovered or should have been discovered.

Motion overruled.